UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NUWAY Alliance, NUWAY House, Inc., 3 Rs NUWAY Counseling Center, NUWAY Saint Cloud Counseling Center, NUWAY University Counseling Center, NUWAY Rochester Counseling Center, 2118 NUWAY Counseling Center, NUWAY Mankato Counseling Center, NUWAY Duluth Counseling Center, <br><br>Plaintiffs, <br><br>v. <br><br>Minnesota Department of Human Services Temporary Commissioner Shireen Gandhi, *in her official capacity*, <br><br>Defendant. | Court File No.   0:25-cv-00492 <br><br><br>**COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs NUWAY Alliance, NUWAY House, Inc., 3 Rs NUWAY Counseling Center, NUWAY Saint Cloud Counseling Center, NUWAY University Counseling Center, NUWAY Rochester Counseling Center, 2118 NUWAY Counseling Center, NUWAY Mankato Counseling Center, and NUWAY Duluth Counseling Center (collectively "NUWAY), for its Complaint against Defendant Minnesota Department of Human Services Temporary Commissioner Shireen Gandhi ("DHS"), acting in her official capacity, state and allege the following:

## INTRODUCTORY STATEMENT

Through a "temporary payment withhold" of Medicaid reimbursement funds, Defendant DHS seeks to indefinitely—and in effect, permanently—close the doors of the

largest provider of outpatient substance use disorder treatment in Minnesota based on an unspecified "credible allegation of fraud." DHS seeks to do so without providing NUWAY a hearing, any meaningful opportunity to respond to the allegations, or the ability to present facts to a neutral arbiter.

Upon information and belief, DHS's actions are premised on unproven allegations of fraud from the Department of Justice, which NUWAY vigorously denies. DHS's payment withhold presents NUWAY with two options: settle a case with DOJ on DOJ's terms or stand by idly while the payment withhold goes into effect, either of which will result in the swift demise of NUWAY's award winning and highly effective outpatient treatment program. DHS's actions will evict hundreds of Minnesotans in substance use disorder treatment from their housing, interrupt (and, for some, entirely disrupt) the continuity of their substance abuse treatment, and, in summary fashion shutter NUWAY's outpatient program and significantly hinder its ability to provide residential treatment.

DHS's payment withhold violates fundamental constitutional and statutory rights. NUWAY brings this action to force DHS to provide the notice and hearing that NUWAY is entitled to under federal constitutional and statutory law.

## PARTIES

1. Plaintiff NUWAY Alliance is a nonprofit corporation. It is the parent organization of the other plaintiffs. Its registered office is located at 2217 Nicollet Avenue South, Minneapolis, Minnesota 55404.

2. Plaintiff NUWAY House, Inc. is a nonprofit corporation. Its registered office is located at 2217 Nicollet Avenue South, Minneapolis, Minnesota 55404.

3. Plaintiffs 3 Rs NUWAY Counseling Center, Saint Cloud Counseling Center, NUWAY University Counseling Center, NUWAY Rochester Counseling Center, 2118 NUWAY Counseling Center, NUWAY Mankato Counseling Center, and NUWAY Duluth Counseling Center (the "Counseling Centers") are outpatient substance use disorder treatment centers located throughout Minnesota that are operated by NUWAY House, Inc. The Counseling Centers are owned and operated by NUWAY House, Inc. Each has a separate National Provider Identifier (NPI) and license with the Minnesota Department of Human Services (DHS).

4. Defendant Shireen Gandhi is Temporary Commissioner of the Minnesota DHS. She is named in her official capacity. Temporary Commissioner Gandhi oversees the Minnesota Department of Human Services, which is the Minnesota state agency that administers Minnesota's Health Care Programs.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331. This action arises under the Fourteenth Amendment of the United States Constitution and under 42 U.S.C. § 1983 and 42 C.F.R. § 455.23.

6. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391 because the conduct alleged is occurring in this District.

## BACKGROUND

### Medicaid Covers Substance Use Disorder Services

7. Minnesota's Medicaid program covers substance abuse treatment services.

8. Minnesota law also includes several other provisions relating to the coverage of these services and the treatment of substance use disorder. *See, e.g.*, Minn. Stat. §§ 256B.0671, subd. 9(c)(iv); 256B.0759; 256B.0761; 256B.0947, subd. 3a(a)(12); 256B.77, subd. 26; 256B.79, subd. 4.

9. DHS administers Minnesota Health Care Programs (MHCP), including Minnesota's Medicaid program.

10. As a provider of substance abuse treatment, NUWAY receives reimbursements from MHCP for the services it provides.

11. Almost all of NUWAY's clients are low income and eligible for Medical Assistance. As a result, NUWAY relies on reimbursement through MHCP to provide its services.

### NUWAY Provides Safe and Effective Treatment to Individuals with Substance Use Disorders

12. NUWAY is a nonprofit corporation that provides substance use disorder treatment.

13. NUWAY was founded in 1966 and served as a "halfway house" for individuals engaged in recovery from substance use disorder. NUWAY established additional halfway houses throughout the 1990s.

14. After rate reform in 2011, many providers of halfway houses and extended care addiction treatment services opted to become high-intensity residential treatment centers. This change left a gap in extended care services for individuals immediately following their discharge from a high-intensity residential treatment center. Consequently,

individuals leaving high-intensity residential treatment were discharged to the street and quickly relapsed into substance use.

15. To address the gap in services for individuals being discharged from residential treatment, NUWAY created the Recovery in Supportive Environments (RISE) program to pair intensive outpatient treatment with safe, substance-free housing. RISE changed the Minnesota treatment paradigm by shortening the therapeutic day, while increasing the potential number of days those clients had access to therapy.

16. In addition to ten weeks of intensive outpatient therapy, clients in the RISE program receive housing support.

17. NUWAY pays an abstinence-based recovery residence, generally of the individual's choice, to house the client during the period of intensive outpatient treatment with NUWAY and for a thirty-day period following the successful conclusion of intensive outpatient treatment. RISE originally provided a stipend in the amount of $550 per month. The current stipend is $700 per month.

18. The recovery residences that receive the stipend are independent and community based. NUWAY vets these residences to ensure that they can provide safe, appropriate housing for NUWAY's clients. But it rarely receives referrals from these residences, and—other than paying the stipend for its clients—NUWAY does not have a financial interest in the residences.

19. Housing support is a crucial aspect of effective substance use and mental health disorder treatment. Unlike other recovery programs that included housing before NUWAY created the RISE program, RISE's housing support allows clients to choose

where they live. Without the housing support that NUWAY provides, many of the clients receiving treatment through RISE would be homeless.

20. NUWAY's intent in providing these stipends is to support stable housing, which is a key component of a successful and sustained recovery for substance use disorder clients.

21. NUWAY is now Minnesota's largest provider of outpatient substance abuse treatment. In 2024, NUWAY provided intensive outpatient treatment to over 5,000 individuals. NUWAY currently serves over 800 clients in intensive outpatient treatment. Of NUWAY's current intensive outpatient clients, 84% participate in the RISE program and receive financial support for their housing through NUWAY.

22. The RISE program is effective. A University of Minnesota study showed that NUWAY's intensive outpatient clients were twenty percent more likely to complete treatment if they participated in RISE. The study also found that, on average, participants in recovery housing spent thirty-seven more days in treatment than those not in housing.

23. The effectiveness of NUWAY's RISE program has been publicly recognized. UCare, a Managed Care Organization that coordinates and manages Medicaid services for NUWAY clients, presented NUWAY with its Innovation Award for the RISE program. UCare specifically recognized RISE for "implementing innovative strategies to improve the mental health and addiction recovery of UCare members" and "addressing

housing insecurity as part of addiction care to help individuals who struggle most gain access to sustainable recovery from addiction."[1]

24. NUWAY has been transparent with the public and DHS about its RISE program. In 2019, for example, NUWAY applied for the DHS Commissioner's Circle of Excellence Award. Its application fully detailed the RISE program: it explained that NUWAY provided a flat-rate payment to subsidize clients' housing at community recovery residences and that such subsidization came out of NUWAY's own resources at no additional cost to the client or third-party payor. Although NUWAY did not receive the DHS Award, DHS did not raise any concerns about the RISE program.

### DHS Notified NUWAY That It Will Indefinitely Suspend Payment for NUWAY's Intensive Outpatient Treatment Services

25. In April 2022, NUWAY received information that it was the subject of a federal False Claims Act investigation.

26. The main subject of the investigation was NUWAY's practice of subsidizing the cost of housing for clients. The federal government asserted that the subsidy potentially constituted a kickback under 42 U.S.C. § 1320a-7b(b)(2), which prohibits

> knowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for

---

[1] *See NUWAY honored at UCare's "A Salute to Excellence!" celebration*, NUWAY Alliance (October 28, 2022), available at https://www.nuway.org/nuway-honored-at-ucares-a-salute-to-excellence-celebration.

which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program[.]

27. NUWAY fiercely contests that any aspect of its RISE program violated the False Claims Act.

28. The federal government's False Claims Act investigation also involved scrutiny of NUWAY's billing practices. DHS provides reimbursement for "alcohol and/or drug counseling per hour." Prior to September of 2024, a billable "unit of time" was attained under DHS's billing guidance when the "mid-point" of the unit of time is passed. In other words, once a counseling session passed the "mid-point" of an hour—i.e., 31 minutes—the provider had provided a unit of service and could receive reimbursement. Particularly after the COVID-19 pandemic, NUWAY often scheduled its sessions for periods of less than an hour (such as 35-minute sessions), took short breaks, and then began another session of less than an hour. Because each individual session passed the midpoint, it constituted a "unit of time" for which NUWAY could receive reimbursement. NUWAY billed for one unit for these sessions. This billing practice was entirely consistent with the DHS-provided billing instructions at the time, which NUWAY relied upon. Recently, DHS changed its guidance. NUWAY immediately adapted its treatment schedule and billing practice to conform to DHS's new position.

8

29. NUWAY fiercely contests that its billing practice constituted a violation of the False Claims Act or was in any way fraudulent.

30. NUWAY has continued to operate during the Department of Justice's investigation.

31. During the first 23 months of the Department of Justice's investigation, NUWAY was regularly in contact with the U.S. Attorney's Office but had no contact with DHS about any investigation.

32. On February 29, 2024, however, DHS issued Notices of Payment Withhold to NUWAY facilities that provide intensive outpatient treatment ("the Notices").

33. The Notices stated that DHS would withhold all MHCP payments for substance use treatment services to NUWAY effective April 1, 2024, because DHS "determined there is a credible allegation of fraud for which an investigation is pending under the MHCP."

34. The Notices do not provide any indication of the evidence upon which DHS relied in making its determination, and they contain no specific allegations against NUWAY.

35. The Notices only state that DHS has "information" that NUWAY "billed for services not provided for as billed; [i]mproperly induced services through the use of illegal kickbacks; [f]ailed to return overpayments; [s]ubmitted claims for which it was not entitled to reimbursement; and [f]ailed to document services in compliance with legal requirements."

9

36. The Notices state that the payment withholds will continue for the maximum amount of time permitted by statute: "until DHS or a prosecuting authority determines there is insufficient evidence of fraud, or until legal proceedings related to the alleged fraud are completed."

37. DHS refused to specifically identify the practices or payments underlying its concerns.

38. On March 8, 2024, DHS sent a letter refusing to disclose any further information about the payment withhold. It also stated that "DHS has considered whether good cause exists under state and federal law not to withhold payments to NUWAY and does not find good cause for the affected program at this time." Because DHS has refused to specifically identify the basis for its payment withhold, NUWAY has been left to assume that the suspension is related to the federal investigation.

39. NUWAY sent written communications to DHS explaining that, despite the federal investigation, NUWAY has not engaged in fraud.

40. DHS agreed to extend the payment withhold deadline a number of times but has never addressed any of the substantive issues raised regarding the allegations of fraud or engaged with NUWAY on whether good cause exists not to withhold payments. DHS made clear that extensions had been and would be granted while NUWAY communicated with and attempted to resolve the case with the U.S. Attorney's Office.

41. On December 5, 2024, DHS sent Amended Notices of Payment Withhold to NUWAY. The Amended Notices state that DHS will withhold payment for substance use disorder treatment services "start[ing] February 21, 2025 and continu[ing] until DHS or a

prosecuting authority determines there is insufficient evidence of fraud, or until legal proceedings relating to the alleged fraud are completed."

42. During the first week of February 2025, DHS communicated to NUWAY that, because NUWAY and the U.S. Attorney's Office had not reached a resolution, DHS will not entertain another extension of the payment withhold. Consequently, the payment withhold will take effect on February 21, 2025.

### Federal and State Law Require DHS to Provide NUWAY Due Process in Connection with a Payment Withhold

43. Under 42 C.F.R. § 455.23(a):

   (1) The State Medicaid agency must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual or entity unless the agency has good cause to not suspend payments or to suspend payment only in part.
   . . .
   (3) A provider may request, and must be granted, administrative review where State law so requires.

44. The notice of payment withhold must set forth "the applicable State administrative appeals process and corresponding citations to State law." *Id.* § 455.23(b)(2)(vi).

45. State Medicaid agencies can only suspend payments on a "temporary basis" due to a credible allegation of fraud. *Id.* § 455.23(c).

46. Minnesota law requires administrative review under Minn. Stat. § 256B.064, subd. 2.

11

47. The Notices do not set forth Minnesota's administrative appeals process and the corresponding citations to Minnesota law in its notices of payment withholding.

48. DHS has failed to give NUWAY the administrative appeals process provided under Minn. Stat. § 256B.064, subd. 2, which includes the opportunity for a hearing at which NUWAY could contest the payment withhold.

49. There are no credible allegations of fraud against NUWAY.

50. There is good cause not to suspend payments to NUWAY.

51. DHS's suspension of payments is indefinite, not temporary.

52. Minnesota statutes require DHS to consider multiple factors before imposing a payment suspension. *See* Minn. Stat. § 256B.064, subd. 1b. Upon information and belief, DHS failed to do so.

**A Payment Withhold Will Cause NUWAY's Clients to Lose Their Housing and Treatment and Force NUWAY Out of Business**

53. DHS's payment suspension will be catastrophic for NUWAY and its clients.

54. If NUWAY is not reimbursed for its intensive outpatient treatment services, NUWAY will be unable to continue operating those services.

55. NUWAY clients would also suffer from interruption—and potentially complete disruption—to their continuity of treatment. Continuity is particularly important for those in the process of recovery from a substance use disorder. Individuals transitioning out of high intensity residential treatment are in a vulnerable phase of recovery, and interrupting clients' treatment program will put those clients at a higher risk of relapse.

56. If NUWAY ceases outpatient treatment operations, its clients will lose their housing in NUWAY's partner recovery residences. On information and belief, other housing support services in Minnesota do not have the capacity to take on the hundreds of clients that NUWAY serves. It is likely that many of NUWAY's current clients will be unable to secure alternative substance-free housing.

57. Over 200 trained NUWAY clinicians and employees will lose their jobs and benefits.

58. Over forty students will lose their internships, resulting in potential loss of credits during the current semester and delay in the students' ability to obtain licensure required for employment.

59. NUWAY will lose its reputation as one of Minnesota's preeminent substance use disorder treatment providers.

## COUNT I

**Fourteenth Amendment Due Process Violation under the United States Constitution and 42 U.S.C. § 1983**

60. NUWAY realleges all previous paragraphs of this Complaint.

61. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that states shall not "deprive any person of life, liberty, or property without due process of law."

62. 42 U.S.C. § 1983 makes liable any person acting under color of law who deprives another of his or her rights under "any rights, privileges, or immunities secured by the Constitution and laws."

63. NUWAY has a protected property interest in reimbursement for treatment services already performed and continued payment of Medicaid claims that NUWAY submits to DHS.

64. Withholding payment of claims that NUWAY submits for treatment services deprives NUWAY of its protected property interest.

65. Federal and state statutes provide due process in connection with DHS's decision to withhold payments to NUWAY. DHS seeks to deprive NUWAY of its protected property interest without adhering to those procedures.

66. DHS has indicated that it will suspend NUWAY's reimbursement payments without providing adequate notice and a meaningful opportunity to be heard.

67. As a result of DHS's actions, NUWAY and its clients have suffered and will continue to suffer irreparable harm and other damages, including injury to NUWAY's reputation, disruption to the continuity of care for NUWAY's clients, and the loss of housing for NUWAY clients, for which NUWAY and its clients lack an adequate remedy at law.

68. By failing to provide adequate notice and a meaningful opportunity to be heard, DHS violated NUWAY's Fourteenth Amendment right to due process and deprived NUWAY of its rights under the United States Constitution.

69. DHS is liable for depriving NUWAY of such rights under 42 U.S.C. § 1983.

70. As a result of DHS's actions, NUWAY and its clients have suffered and will continue to suffer irreparable harm and other damages, including injury to NUWAY's reputation, disruption to the continuity of care for NUWAY's clients, and the loss of

housing for NUWAY clients, for which NUWAY and its clients lack an adequate remedy at law.

71. NUWAY is entitled to, and requests, declaratory and injunctive relief directing DHS to comply with its due process obligations as provided by federal and state law.

## COUNT II

### Violation of Medicaid Act under 42 U.S.C. § 1983

72. NUWAY realleges all previous paragraphs of this Complaint.

73. 42 C.F.R. § 455.23(a)(3) requires a state agency administering Medicaid to provide for administrative review of a Medicaid payment suspension when state law requires such review.

74. 42 C.F.R. § 455.23(b)(2) further requires a state agency administering Medicaid to provide a notice of Medicaid payment suspension that sets forth the applicable state administrative appeals process.

75. Minn. Stat. § 256B.064 requires that providers be afforded administrative review—specifically a contested case hearing—when DHS suspends Medicaid payments.

76. DHS did not provide information about the administrative appeals process in the Notices to NUWAY.

77. DHS has not provided the contested case hearing required under Minn. Stat. § 256B.064 to NUWAY.

78. By failing to comply with the requirements of 42 C.F.R. § 455.23(a)(3), DHS deprived NUWAY of its rights secured by federal law and is accordingly liable to NUWAY under 42 U.S.C. § 1983.

79. As a result of DHS's actions, NUWAY and its clients have suffered and will continue to suffer irreparable harm and other damages, including injury to NUWAY's reputation, disruption to the continuity of care for NUWAY's clients, and the loss of housing for NUWAY clients, for which NUWAY and its clients lack an adequate remedy at law.

80. NUWAY is entitled to, and requests, declaratory and injunctive relief directing DHS to comply with its obligation to provide administrative review as provided by federal and state law.

### COUNT III

**Declaratory Judgment Under 28 U.S.C § 2201(a)**

81. NUWAY realleges all previous paragraphs of this Complaint.

82. Under 28 U.S.C. § 2201(a), a federal court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

83. NUWAY is entitled to a declaratory judgment that federal and Minnesota law requires DHS provide a contested case hearing in which NUWAY can meaningfully challenge DHS's payment withholding.

84. NUWAY is entitled to a declaratory judgment that withholding payment from NUWAY without providing an opportunity for a hearing violates federal and state statute and NUWAY's constitutional right to due process.

85. NUWAY is entitled to a declaratory judgment that the Notices are void, and therefore without effect, because they do not set forth the applicable administrative appeals process and corresponding citations to Minnesota law.

## REQUEST FOR RELIEF

**WHEREFORE**, NUWAY respectfully requests that the Court grant the following relief:

1. An order declaring that:

    a. DHS must comply with the requirements of 42 C.F.R. § 455.23 and Minn. Stat. § 256B.064 by providing a contested case hearing at which NUWAY can challenge DHS's Medicaid payment withholding;

    b. withholding Medicaid payments from NUWAY without providing an opportunity for a hearing violates federal and state statute and NUWAY's constitutional right to due process;

2. An injunction prohibiting DHS from withholding Medicaid reimbursement payments to NUWAY; and

3. Such other and further relief as the Court deems just and equitable.

Dated: February 7, 2025

*s/ Manda M. Sertich*
Manda M. Sertich (#0504328)
Rachel L. Dougherty (#0399947)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 492-7000
msertich@fredlaw.com
rdougherty@fredlaw.com

*Attorneys for Plaintiffs*