# Exhibit C



**Fredrikson & Byron, P.A.**
Attorneys and Advisors

60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Main: 612.492.7000
fredlaw.com

March 11, 2024

Minnesota Department of Human Services (DHS)
Program Integrity Oversight Division (PIO)
P.O. Box 64982
St. Paul, MN 55164-0982

Re:    Notice of Payment Withhold
       Provider Number: 577162000;
       NPI: 1265515639

Dear Authorized Representative:

We are writing in response to the department's February 29, 2024 letters (one attached as Exhibit 1) to multiple NUWAY facilities. Those letters indicate that payment to NUWAY will be suspended April 1, 2024 because the department "has information" that NUWAY 1) Billed for services not provided as billed; 2) Improperly induced services through the use of illegal kickbacks; 3) Failed to return overpayments; 4) Submitted claims for which it was not entitled to reimbursement; and 5) Failed to document services in compliance with legal requirements. Multiple attempts to obtain any additional details about the allegations, including specific examples, or basic information, such as, who paid the kickbacks, to whom, when, and in what form, or what types of claims were improper or have been rebuffed. The letter does mention the statutory right NUWAY has to submit "written evidence" as to why the suspension should not be imposed. That offer is rather ironic given that neither the letter nor further correspondence with the department have offered any "evidence" supporting the suspension. Thus far, the department has refused to provide even the most basic specificity regarding the allegedly "credible allegation of fraud" you have received. That nullifies our ability to exercise the statutory right to provide evidence as to why the suspension should not be imposed. We can't offer evidence defending conduct without knowing what conduct is under review. However, to make sure we are exhausting our administrative remedies, and in the hopes that you will carefully consider the information provided, we will use the incredibly limited information provided in the letter to do our best to explain why the suspension is improper.

Some fights have no winners. A payment suspension would be such a Pyrrhic fight. It will be bad for the State, absolutely terrible for NUWAY, and most importantly, potentially catastrophic for some undeniably innocent citizens of the State of Minnesota who are working to overcome addiction. The suspension will cause their treatment team and, in some cases, housing, to vanish. Fortunately, even if you disagree with the balance of this letter, there is an easy way out of this fight. More on that below.

We believe that the department is misreading the provision of the federal regulations and Minnesota statute that says that the notice must "Set forth the general allegations as to the nature


of the suspension action but need not disclose any specific information concerning an ongoing investigation." 42 CFR 455.23(b)(2), 256B.064 Subd. 2(c)(2). We would like to call your attention to the distinction between the conduct in question, and the investigation of that conduct. Those provisions permit the state to decline to provide any specific information concerning the INVESTIGATION. You are not required to detail who provided information, who you spoke with, who you are investigating or what would commonly be called your "methods or sources." But the first portion of the provision requires disclosure of the allegations themselves. It is helpful to draw an analogy to most privileges. Generally, the PROCESS is confidential, but the underlying FACTS are not. When a client provides me with a document, the fact that they sent me the document is protected. The document itself remains discoverable. The department is misconstruing the statute and regulations as permitting near-total secrecy. But the law requires disclosure of the allegations; the state can only decline to comment about how the investigation is proceeding.

Fortunately, we do have some basis to speculate on what the conduct may be. The federal government started an inquiry about two years ago examining whether NUWAY's policy of subsidizing recovery residences for patients violated the antikickback statute. The subsidy of recovery residences is part of NUWAY's Recovery in Supportive Environments, or RISE program. In the absence of any detail from you about what you are investigating, we are going to assume this is the basis of your investigation. (We did specifically ask your counsel whether your investigation was based on the federal inquiry but were told that they can't answer that question. That refusal is puzzling given that the federal government has been totally transparent about the topic it is reviewing.) When launched, the RISE program had several novel characteristics. Rather than providing 40 units of therapy a week for five weeks, as most programs did, it halved the daily therapy, spreading it over 10 to 15 weeks, on the premise that a longer course of treatment would be more effective. RISE also included payment directly to a recovery residence chosen by the client to ensure that the client had housing during, and for one month following, their treatment. The state had programs that paid for housing, but application for those programs was often challenging for clients. Rather than requiring clients to navigate the application process, or seeking state money, NUWAY, a non-profit, was willing to fund the programs as part of its mission, out of the funds it was already receiving. This approach should have lowered the state's overall outlay, because the state did not need to pay for client housing. We are very comfortable that the subsidies do not violate the antikickback provision for several reasons. One reason is that Congress passed a safe harbor under the Civil Monetary penalty provision for payments that promote a patient's access to care without posing a risk to the patient or the Medicaid program. That provision, SSA §1128A(i)(6)(F), 42 U.S.C. 1320a–7a(i)(6)(F), excludes from "remuneration "any other remuneration which promotes access to care and poses a low risk of harm to patients and Federal health care programs (as defined in section 1128B(f) and designated by the Secretary under regulations)."

That provision is part of the Civil Monetary Penalty ("CMP") statute. The CMP provision is very similar to the antikickback statute, but contains civil, rather than criminal, penalties. We should note that there is a court in New York that concluded that the exception ONLY protects organizations from civil monetary penalties and does not offer any immunity under the



antikickback statute. We concede that to someone who is hyper-technical, that reading is accurate. But applying that technicality would result in absolutely absurd result: It would mean that Congress is saying to the health care industry "we want you to make payments that promote access to care. Don't worry, we promise not to FINE you if you do that. But we should mention that we will still put you in JAIL!!! There is simply no way that Congress would have intended to ONLY provide protection from fines, but still permit criminal penalties for the very same conduct. (It is worth noting that the facts in the New York case are radically different. That case involved allegations that a treatment facility was providing medically unnecessary care and placing patients in terribly substandard housing. The very troubling facts likely influenced the analysis.)

Moreover, for the first six years of the RISE program, patient placement was the responsibility of the county. The county determined whether the client needed care and where they would receive it. Your letter asserts that NUWAY "improperly induced services" but that wasn't factually possible unless the kickbacks were to placing authorities. In Minnesota, Rule 25 gave counties (and other placing authorities) sole authority to determine whether and where the patient got services. Under that program "the placing authority must determine appropriate services for clients" (Minn. Rule 9530.6620 Subp. 1) and "the placing authority maintains the responsibility and right to choose the specific provider." (Minn. Rule 9530.6620, Subp. 9.) The placing authority, not the patient, had control over the patient's course of treatment, include the types and amount of services and the provider. The idea that NUWAY could induce improper service with kickbacks to patients ignores the reality that patients didn't have the authority to determine their course of treatment.

But there is an even stronger reason that you must conclude that any allegation based on assistance with recovery residences is not a "credible allegation of fraud" under the payment suspension provision. As you know, most Medicaid enrollees are covered by managed care organizations as part of the prepaid medical assistance program ("PMAPs"). The PMAPs in Minnesota are fully aware of this program. They have incorporated the details of this program into their contracts with NUWAY. For example, a contract with Hennepin Health states "Provider shall provide monthly recovery residence support of $550 to each Eligible Member for the duration of the Member's receipt of covered outpatient treatment from the services Provider." See Exhibit 2, page 9. HealthPartners has similar language Exhibit 3, page 1-2. That means that PMAPs have contractually required NUWAY to engage in the conduct that the federal government is investigating as an alleged kickback. UCARE gave NUWAY an award for offering the very subsidy in question. UCARE explained that NUWAY's "innovative care delivery…. helps individuals gain access to sustainable recovery from addiction through housing support." Exhibit 4. The payors not only KNOW about the housing subsidy, they LIKE it. It helps beneficiaries overcome their addiction. (This confirms that the subsidy presents a low risk of harm to patients and federal health care programs, bringing it within the exception to "remuneration" outlined above.) But whether or not you agree with the legal analysis above, the fact that the PMAPs are fully aware of the program creates an <u>absolute</u> bar to a payment suspension based on the RISE program. Payment suspension requires a "credible allegation of FRAUD." And "fraud" is defined as "**an intentional deception or misrepresentation** made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or some other



person. It includes any act that constitutes fraud under applicable Federal or State law." 42 CFR 455.2. Without deception (or a criminal conviction) there is no basis to suspend payments. Minn. Stat. 256B.064 Subd. 2(b). The fact that payors were aware of the program would mean that even if they hadn't given it awards, it can't be "fraud" as defined in the federal and state provisions related to payment suspensions. Even if a federal court were to rule that the program violated the antikickback statute, (which seems very unlikely given these facts) the public knowledge means that it cannot constitute "fraud," in the way that is required for payment suspension.

There is a second issue that the Federal government is aware of. That issue involves some billing details. We are exploring situations where our billing system may not have fully captured some patients who missed portions of therapy sessions. The issue is not widespread. It might affect approximately one percent of claims over the last four years. But here is the most important point: NUWAY notified the federal government about the issue. Whether or not NUWAY will ultimately owe any refund on these services, just like the housing subsidy the conduct in question can't constitute "fraud" as defined in the regulation because NUWAY brought the federal government's attention to the issue. Once again, there was no "intentional misrepresentation" as required by the payment suspension statute.

For these reasons we believe that the state lacks the legal basis to suspend payments to NUWAY. But even if you reject all of those arguments you can and should withdraw the suspension. As you know Federal and state law permit the department unfettered discretion to protect public health and act in the best interest of people and the Medicaid program. The federal regulation on suspension of payments in cases of fraud grants the state discretion to continue payments when it is good policy: "A State may find that good cause exists not to suspend payments, or not to continue a payment suspension previously imposed, to an individual or entity against which there is an investigation of a credible allegation of fraud if any of the following are applicable: ....The State determines that payment suspension is not in the best interests of the Medicaid program." 42 CFR § 455.23(e)(6). There is ample reason for such a finding. As you know, substance abuse is a major problem in the state and country, and there is a shortage of treatment options. Clinically, NUWAY is very well respected. Attached is the list of 19 Substance Use Treatment and Recovery programs designated by BCBS MN as "Blue Distinction Centers." Exhibit 5. According to BCBS MN, "Blue Distinction Specialty Care providers demonstrate better quality overall, including 27 percent lower readmission rates 90 days after treatment when compared to providers who have not earned the designation." Seven of the 19 Blue Distinction Centers are NUWAY locations. In fact, Allina, Hazelden, Mayo and NUWAY constitute 17 of the 19 centers. You don't need to be an expert to understand that disrupting the treatment and housing of a patient in recovery creates a risk of relapse. If you prevent Medicaid patients from receiving care at 1/3 of these top facilities, patients will be harmed.

That, by itself, could form the basis of a decision to withdraw the suspension. But if you remain unpersuaded, there is a final, easy, solution that protects the interests of the Medicaid program. The State may join the federal government's investigation. It is common for federal and state investigators to work together. I've worked on many such investigations in multiple different



jurisdictions. Ultimately, one of three things will occur. Either government investigators will conclude NUWAY's actions were permissible and close its investigation, NUWAY will agree to a settlement to resolve the dispute, or we will wind up in court. But in any of those three outcomes, the State's ability to recover its funds is preserved. In fact, assuming that there is an overpayment as a result of the billing issue mentioned above, the payment suspension LOWERS the odds of the state recovering the money. Cessation of payment will result in NUWAY spending down its reserves to try to aid in the transition of clients and staff. Within two months NUWAY is unlikely to exist. Rather than easily repaying a small sum to the state, the state will receive nothing. A payment suspension is likely to harm, rather than help, the government fisc. (If it would help allay your concerns, NUWAY would be happy to explore obtaining a bond to further protect the State's interests.)

Finally, I would like to address the content of the notice. One of the unstated implications of the State's unwillingness to provide us with information about the allegations is that knowledge of the details will somehow facilitate obstruction of justice. I am acutely aware that it is axiomatic that disclosure of information during an investigation can interfere with the investigation. But I would like to challenge that conventional wisdom. I would posit that the sort of secrecy being practiced by investigators here does nothing at all to deter or harm actual criminals, but it tremendously harms the innocent. A payment suspension discloses the investigation. To the extent an entity is committing fraud and wishes to destroy evidence, a payment suspension provides the notice to trigger illegal document destruction. The guilty don't need specificity in a notice to know what to destroy. They KNOW already know what their conduct is. But the innocent need detail to be able to demonstrate that the government's beliefs are mistaken. The state's policy of refusing to provide information about allegations victimizes innocent health care organizations while doing absolutely nothing to protect government funds from wrongdoers. I will concede that telling someone about the <u>existence</u> of an investigation may "tip someone off," and permit them to start a cover-up. But the payment suspension is the tip. A guilty person needs nothing more if they intent to obstruct justice. Providing more detail can't hurt the state, but it can lower the risk of a terrible miscarriage of justice.

While the notion that the including details in the notice will be "tipping off" perpetrators is always wrong, in this case it's affirmatively silly. NUWAY first learned of an investigation nearly two years ago, in April 2022. Since then, we've produced tens of thousands of documents and made employees available for interviews by government agents. If NUWAY had intended to obstruct the investigation it has had 23 months to engage in nefarious conduct. It hasn't. There are many reasons it has not, not the least of which is that obstructing an investigation is a felony. Moreover, NUWAY stands by its conduct. We are perfectly willing to undergo governmental scrutiny. I would even add to that that we are willing to undergo public scrutiny, but I must include one important caveat.

To date, NUWAY has been remarkably tightlipped about this investigation. This desire for confidentiality is not caused by shame or embarrassment. Instead, it stems from a knowledge that the RISE is now used by many organizations throughout the State. Programs have seen RISE's success. We are convinced that it lowers incidents of relapse, and it seems many other



organizations agree. We are confident that the investigative process will vindicate the practice of subsidizing recovery residences. But should the investigation become public before final resolution, other organizations providing recovery residence assistance will understandably become concerned and likely cease offering similar programs. If other treatment centers top subsidizing recovery residences, many residents may lose access to housing. Some of those people will be able to turn to state programs, but that process takes time, and will increase the state's outlay. Public disclosure will hurt citizens and increase state costs. Because of the potential disruption in housing, while we are entirely willing to undergo any scrutiny necessary, we hope that you will consider how you can preserve the confidentiality of the investigation until you've reached a definitive conclusion about the propriety of the RISE program. If our position is correct, public disclosure could lead to completely avoidable episodes of relapse. We would ask that before you take any action that would discourage organizations from subsidizing recovery residences, you be absolutely certain that this is the proper course. That provides another independent reason to withdraw the suspension. We hope you will agree this constitutes "good cause" to avoid suspension.

Once we start disclosing this situation to our staff and patients, many of the harms outlined in this letter will begin. Your notice requires us to start that action this week. We are hoping that you will get back to us in the next day with a decision to either revoke or delay the suspension. Thank you for your consideration.

Sincerely,

David M. Glaser
**Direct Dial:** 612.492.7143
**Email:** dglaser@fredlaw.com

DMG

Cc:     Charles Esboldt (via email)
        Corrie Oberg, Esq. (via email)
        Mary Fee, Esq. (via email)

EXHIBIT 1

**DEPARTMENT OF HUMAN SERVICES**

February 29, 2024

Nuway House, Inc.
Ben Madden Nuway House
2518 First Avenue South
Minneapolis, MN 55404

Certified and Regular Mail

**Notice of Payment Withhold**
**Provider Number: 577162000; NPI: 1265515639**

Dear Authorized Representative:

The Minnesota Department of Human Services (DHS) Program Integrity Oversight Division (PIO) will withhold all Minnesota Health Care Programs (MHCP) payments for substance use disorder treatment services to Nuway House, Inc. effective April 1, 2024.

**Basis for Action**

DHS determined there is a credible allegation of fraud for which an investigation is pending under the MHCP. DHS has information that Nuway House, Inc.:
- Billed for services not provided as billed;
- Improperly induced services through the use of illegal kickbacks;
- Failed to return overpayments;
- Submitted claims for which it was not entitled to reimbursement; and
- Failed to document services in compliance with legal requirements.

**Temporary Withholding**

The MHCP payment withhold will start April 1, 2024 and continue until DHS or a prosecuting authority determines there is insufficient evidence of fraud, or until legal proceedings related to the alleged fraud are completed.

Nuway House, Inc. has the right to submit written evidence to DHS explaining why payments should not be withheld. Mail your written evidence to the P.O. Box listed at the bottom of the page.

If Nuway House, Inc. is going to continue to provide services to MHCP recipients while it is not being paid by MHCP, it must notify PIO by March 14, 2024. To notify PIO, call the investigator below at 651-431-2921.

If Nuway House, Inc. is unable to continue providing services to MHCP recipients, it must:
- Notify recipients and employees about this change
- Assist the recipients in transitioning to providers of their choice

- Know that DHS is available to assist recipients with transitions to other providers.

If you have questions about this notice, require it in an accessible format, or need a reasonable accommodation for a disability, please contact Charles Esboldt at 651-431-2921, Charles.Esboldt@state.mn.us, or use your preferred relay service.

Program Integrity Oversight Division
Office of the Inspector General
Minnesota Department of Human Services

*Legal Authority:*
Minnesota Statutes, sections 256B.064, subd. 2(b) and 256B.0641
Minnesota Rules, parts 9505.0180, 9505.2231 and 9505.2160 to 9505.2245.
42 CFR section 455.23

EXHIBIT 4



people powered health plans



**FOR IMMEDIATE RELEASE**

MEDIA CONTACT:
Wendy Wicks, 612-306-3698
wwicks@ucare.org

## UCare's "A Salute to Excellence!" celebrates 23 providers

*Clinics and care systems across Minnesota recognized for
exceptional quality care, with a special award for mental health innovation*

MINNEAPOLIS, Oct. 18, 2022 — UCare, a community-based, nonprofit health plan, held
its 14th annual "A Salute to Excellence!" event Thursday evening, Oct. 13, at the
University of Minnesota McNamara Alumni Center. The event honored 22 Minnesota
clinics and care systems with top results in 2021 Healthcare Effectiveness Data and
Information Set (HEDIS) measures. Awards were given for health care providers'
performance delivering high-quality care to UCare's Medicare, Medicaid and Special
Needs Plan members. NUWAY® – a statewide provider of co-occurring substance use
and mental health disorder treatment – received UCare's new Innovation Award for
implementing innovative supportive housing programs as part of addiction care.

This year's A Salute to Excellence! was a hybrid celebration. Many honorees and
UCare leaders gathered in-person at the McNamara Alumni Center while other
honorees – especially in greater Minnesota – joined the program virtually. The evening
opened with a welcome from UCare President and CEO Hilary Marden-Resnik.
"Speaking on behalf of our Board of Directors and leaders, we feel deep gratitude for
what we at UCare call "people power" and for your partnership in making sure our
members get the care they need – and even more importantly – the quality of care they
deserve," said Hilary Marden-Resnik. "Like we do every day at UCare you put your
patients and our members first."

The opening remarks were followed by a feature presentation from Joan Sandstrom,
Vice President of Primary Care at Park Nicollet. For nearly a decade, UCare has
honored Park Nicollet for the outstanding care they deliver to UCare members. That
level of consistent, high quality requires rigorous technology and processes. Sandstrom
shared the secret sauce behind Park Nicollet's highly effective quality program.

Following Park Nicollet's presentation, UCare Vice President of Mental Health and Substance Use Disorders, and Special Needs BasicCare Programs, Jennifer Garber, awarded UCare's Innovation Award to NUWAY. This award recognizes a partner who is improving the health of UCare members through innovative care delivery and/or payment models. NUWAY helps individuals gain access to sustainable recovery from addition through housing support. It was one of the nation's first halfway houses for addiction.

Garber explained how NUWAY has expanded their Recovery in Supportive Environments (R.I.S.E.) model throughout the state. A recent study indicates that clients utilizing R.I.S.E. stay in treatment on average 37 days longer and are 20% more likely to discharge with staff approval. They are also better able to sustain their recovery and self care. Monique Bourgeois, NUWAY's Chief Community Relations Officer, accepted the special award on behalf of her team at NUWAY.

Next up was UCare's new Executive Vice President and Chief Medical Officer, Tenbit Emiru, MD, PhD, MBA, honoring guests with UCare Excellence in Health Care Awards for their quality results. "We know that quality care for our members starts with all of you," affirmed Dr. Emiru. "In 2021, you provided our members and your patients with high-quality preventive care, disease management, mental health and substance use disorder services, maternity care, and assistance with care transitions and medication management."

A Salute to Excellence! honored the following clinics and care systems from across Minnesota and surrounding areas.

- Avera Health
- Bluestone Care Coordination
- Catholic Health Initiatives
- CentraCare
- Essentia Health
- Fairview Physician Associates
- Genevive
- HealthPartners/Park Nicollet
- HealthPartners/Stillwater Medical Group
- Lakeview Clinic Ltd.
- Lakewood Health System
- Mankato Clinic
- Mayo Clinic
- Minnesota Community Care
- North Memorial
- Olmsted Medical Center
- Ridgeview

- Sanford Health
- St. Luke's Hospital of Duluth
- Tri County Hospital
- Voyage Healthcare
- Winona Health Services

**About UCare**

UCare is an independent, nonprofit health plan providing health care and administrative services to nearly 650,000 members throughout Minnesota and parts of western Wisconsin. UCare partners with health care providers, counties, and community organizations to create and deliver Medicare, Medicaid and Individual & Family health plans.

The health plan addresses health care disparities and care access issues through a broad array of community initiatives. UCare has received Top Workplaces honors from the Star Tribune for 13 consecutive years since the rankings began in 2010.

#

EXHIBIT 5

Search     🔍

Home > About Us > Capabilities & Initiatives > Blue Distinction Center Facility Finder

## Blue Distinction Center

# Facilities Search Results

**19 results** for All Designations, Substance Use Treatment and Recovery, MN    

| FACILITY NAME & LOCATION (CLICK FOR MAP) | BLUE DISTINCTION CENTER (BDC) DESIGNATION | BLUE DISTINCTION CENTER+ (BDC+) DESIGNATION | PPO PARTICIPATING PHYSICIANS AFFILIATED WITH DESIGNATED FACILITY –OR– DESIGNATED INDIVIDUALLY (*FERTILITY CARE, ONLY*) |
|---|---|---|---|
| 📍 **3 R's NUWAY Counseling Center Inc** <br> Minneapolis, MN | Substance Use Treatment and Recovery | | PPO Participating Physicians affiliated with this designation are not available for display. |
| 📍 **Allina Health IP Addiction Mercy Hospital Unity Campus** <br> Fridley, MN | Substance Use Treatment and Recovery | | PPO Participating Physicians affiliated with this designation are not available for display. |
| 📍 **Allina Health Outpatient Addiction Services** <br> Cambridge, MN | Substance Use Treatment and Recovery | | PPO Participating Physicians affiliated with this designation are not available for display. |

 Blue Distinction Center Facility Finder Results

INDIVIDUALLY (*FERTILITY CARE, ONLY*)

⊘ Allina Health Outpatient Addiction Services
Fridley, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ Hazelden Center City
Center City, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ Hazelden Center For Youth & Families
Plymouth, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ Hazelden Chaska
Chaska, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ Hazelden Fellowship Club
Saint Paul, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ Hazelden Maple Grove
Maple Grove, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ Mayo Clinic Health System Albert Lea and Austin
Albert Lea, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ Mayo Clinic Hospital Rochester
Rochester, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊘ New Ulm Medical Center
New Ulm, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.



# Blue Distinction Center Facility Finder Results

MENU

INDIVIDUALLY (FERTILITY CARE, ONLY)

⊙ **Nuway 1246**
Saint Paul, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊙ **Nuway 300**
Rochester, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊙ **Nuway 4615**
St Louis, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊙ **Nuway Counseling Center**
Minneapolis, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊙ **Nuway House**
Minneapolis, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊙ **Nuway House Inc**
Minneapolis, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

⊙ **Specialized Treatment Services Inc**
Saint Paul, MN

Substance Use Treatment and Recovery

PPO Participating Physicians affiliated with this designation are not available for display.

[1] This facility indicated voluntarily that Radiologists, Anesthesiologists, Pathologists, Hospitalists, and Intensivists who provide services for elective (scheduled) procedures related to this Blue Distinction Specialty Care program are in the local Plan's BlueCard PPO network.

[2] This is a freestanding surgery center that performs outpatient procedures, not a hospital. Speak with your doctor about the right choice for your bariatric surgery.


cost measures that address consumers' need for affordable healthcare. Each provider's cost of care is evaluated using data from its Local Blue Plan. Providers in CA, ID, NY, PA, and WA may lie in two Local Blue Plans' areas, resulting in two evaluations for cost of care; and their own Local Blue Plans decide whether one or both cost of care evaluation(s) must meet BDC+ national criteria. National criteria for BDC and BDC+ are displayed on www.bcbs.com. Individual outcomes may vary. For details on a provider's in-network status or your own policy's coverage, contact your Local Blue Plan and ask your provider before making an appointment. Neither Blue Cross and Blue Shield Association nor any Blue Plans are responsible for non-covered charges or other losses or damages resulting from Blue Distinction or other provider finder information or care received from Blue Distinction or other providers.



Careers

Contact Us

Healthcare Fraud

Privacy Policy

Terms & Conditions

Cookie Policy

Sitemap

f  in  

© 2024 Blue Cross Blue Shield Association. All Rights Reserved.
The Blue Cross Blue Shield Association is an association of independent, locally operated Blue Cross and Blue Shield companies.



# DEPARTMENT OF
# HUMAN SERVICES

February 29, 2024

Nuway House, Inc.
Ben Madden Nuway House
2518 First Avenue South
Minneapolis, MN 55404

Certified and Regular Mail

**Notice of Payment Withhold**
**Provider Number: 577162000; NPI: 1265515639**

Dear Authorized Representative:

The Minnesota Department of Human Services (DHS) Program Integrity Oversight Division (PIO) will withhold all Minnesota Health Care Programs (MHCP) payments for substance use disorder treatment services to Nuway House, Inc. effective April 1, 2024.

**Basis for Action**

DHS determined there is a credible allegation of fraud for which an investigation is pending under the MHCP. DHS has information that Nuway House, Inc.:
- Billed for services not provided as billed;
- Improperly induced services through the use of illegal kickbacks;
- Failed to return overpayments;
- Submitted claims for which it was not entitled to reimbursement; and
- Failed to document services in compliance with legal requirements.

**Temporary Withholding**

The MHCP payment withhold will start April 1, 2024 and continue until DHS or a prosecuting authority determines there is insufficient evidence of fraud, or until legal proceedings related to the alleged fraud are completed.

Nuway House, Inc. has the right to submit written evidence to DHS explaining why payments should not be withheld. Mail your written evidence to the P.O. Box listed at the bottom of the page.

If Nuway House, Inc. is going to continue to provide services to MHCP recipients while it is not being paid by MHCP, it must notify PIO by March 14, 2024. To notify PIO, call the investigator below at 651-431-2921.

If Nuway House, Inc. is unable to continue providing services to MHCP recipients, it must:
- Notify recipients and employees about this change
- Assist the recipients in transitioning to providers of their choice

- Know that DHS is available to assist recipients with transitions to other providers.

If you have questions about this notice, require it in an accessible format, or need a reasonable accommodation for a disability, please contact Charles Esboldt at 651-431-2921, Charles.Esboldt@state.mn.us, or use your preferred relay service.

Program Integrity Oversight Division
Office of the Inspector General
Minnesota Department of Human Services

*Legal Authority:*
Minnesota Statutes, sections 256B.064, subd. 2(b) and 256B.0641
Minnesota Rules, parts 9505.0180, 9505.2231 and 9505.2160 to 9505.2245.
42 CFR section 455.23