# Exhibit E

| From: | Schollmeier, Betsy J (DHS) |
|---|---|
| To: | Glaser, David |
| Cc: | Sertich, Manda |
| Subject: | RE: NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment |
| Date: | Tuesday, February 4, 2025 8:51:01 AM |

**CAUTION: EXTERNAL E-MAIL**

Good morning, David –

Thank you for your email. I want to be transparent that the purpose of the meeting today is not to discuss the payment withhold itself. DHS intends to move forward with the current effective date, which will stop payments to NUWAY intensive outpatient treatment programs. As you know, when DHS determines independently or is informed by its state and federal law enforcement partners that there is a credible allegation of fraud, it must withhold further Medicaid payments unless a good cause exception is identified. The delays previously imposed were with the hopes that NUWAY would resolve its potential litigation with the USAO, which necessarily would include ceasing practices which have been identified as violating the Medicaid laws. I understand you and attorneys for the federal government and MFCU have discussed these practices and that a settlement has not been reached.

From your representations, client care is your top concern, which is our focus for this meeting. We look forward to discussing NUWAY's plan to ensure clients can be provided access to ongoing care or transition to providers who can fill that need once the payment withhold is in place.

I will follow up on the data request for a status. Here is the statement provided by the Department in response to the news story that was recently published on KARE11:

> **Background for attribution to the department**
> The Minnesota Government Data Practices Act carefully safeguards the integrity of DHS investigations and classifies open investigations as confidential with limited exception. DHS generally cannot confirm or deny the existence of an investigation and can only disclose the existence of a DHS investigation if doing so will not compromise the investigation.
>
> After careful review, DHS is able to confirm the existence of an investigation regarding Nuway. Because it is an open and ongoing investigation we cannot disclose any additional information at this time.
>
> Minnesota does not currently have an anti-kickback law for Medicaid providers. The governor's anti-fraud package announced last week includes an anti-

kickback proposal. It mimics current federal law by making it illegal for service providers to financially incentivize clients or other entities to send them clients and gives the Attorney General's Office authority to pursue criminal charges.

If you have questions about the federal anti-kickback law or related investigations, you should contact HHS.

The governor's anti-fraud package also tightens regulations on SUD providers, including requiring 15-minute billing increments.

**Statement from Human Services Commissioner Jodi Harpstead**
"It's indefensible when providers use loopholes in state law to circumvent the rules while using the people we are trying to help as a shield to avoid punishment. We are working closely with state and federal partners as part of this work to ensure that taxpayers pay only for legitimate services."

"Medicaid programs and services help Minnesotans access medical care, treatment and other vital services. We know the work that providers do is critical to the health and wellbeing of clients. To ensure that providers continue to provide services in line with federal requirements, DHS has proposed an anti-kickback provision in the anti-fraud package that will make it illegal for providers to financially incentivize clients or others to receive services. This will align with federal law."

Thank you and we'll see you at 11am.

Thanks,
Betsy

---

**From:** Glaser, David <dglaser@fredlaw.com>
**Sent:** Monday, February 3, 2025 7:23 PM
**To:** Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us>
**Cc:** Sertich, Manda <msertich@fredlaw.com>
**Subject:** RE: NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment

Betsy, I know you have only been involved in this since October, but DHS has been threating a payment suspension for a year. Over that time we have regularly offered/asked to meet with the Department so we can hear the agency's concerns and offer our explanation. (For example, on the housing front, the fact that the Department

was totally aware of the arrangement since at least 2019.) Over that year we haven't been allowed a single meeting to talk with the Department, nor have we even heard the Department's concerns. It feels like before imposing a payment suspension that is effectively a death penalty, policy considerations, (making sure that patients aren't unnecessarily separated from their therapists and housing) if not basic fairness, would require the Department to carefully consider all of the facts.

Are we going to get that opportunity?

Finally, I do want to know the status of the two data practices requests. And while it fits within one of the requests, I would like to request a copy of the former Commissioner's statement to KARE11 that referred to a "loophole." Thanks so much!!

David

---

**From:** Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us>
**Sent:** Monday, February 3, 2025 5:44 PM
**To:** Glaser, David <dglaser@fredlaw.com>
**Cc:** Sertich, Manda <msertich@fredlaw.com>
**Subject:** RE: NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment

**CAUTION: EXTERNAL E-MAIL**

---

The purpose from DHS' perspective is to understand NUWAY's intentions for its operations in the coming weeks with the payment withhold date looming. I have referred your question regarding the Bond to our PIO Division, but at an initial review, we are not seeing any legal authority for application of a bond.

I have had brief discussions with our USAO and MFCU partners who have shared that a settlement agreement has not been reached. DHS is not entertaining another extension of the payment withhold at this time and is interested in understanding what steps NUWAY is considering to ensure clients can receive care and housing and maintain licensing compliance going forward.

Thank you,
Betsy

---

**From:** Glaser, David <dglaser@fredlaw.com>
**Sent:** Monday, February 3, 2025 5:19 PM

**To:** Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us>
**Cc:** Sertich, Manda <msertich@fredlaw.com>
**Subject:** Re: NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment

Howdy. He will. As will Monique Bourgeois and Angela Hanson. My apologies. I thought you got a notice when I forwarded the invite!

I am a bit worried that the call tomorrow may be more about what happens if the payment suspension takes effect. Am I wrong? I think it is really, really important we have a chance to talk about how to keep NUWAY operating. Is that part of tomorrow's agenda?

Thanks.

David


David Glaser
Fredrikson & Byron, PA
612-492-7143

Sent from my iPhone


> On Feb 3, 2025, at 5:11 PM, Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us> wrote:
>
> **CAUTION: EXTERNAL E-MAIL**
>
> ---
>
> Hi David and Manda –
>
> Just following up to verify whether Ken Roberts will be able to join the call tomorrow? To discuss licensing issues, having the Authorized Agent present is necessary to discuss any licensing implications.
>
> Thanks,
> Betsy

**From:** Glaser, David <dglaser@fredlaw.com>
**Sent:** Friday, January 31, 2025 12:10 PM
**To:** Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us>
**Cc:** Sertich, Manda <msertich@fredlaw.com>
**Subject:** RE: NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment

Hi. Were you thinking in person (happy to make that work, either hosting or coming somewhere) or online?

Tuesday we can do 945-12 or after 130. You mentioned Monday afternoon too. After 130 works for us. Please let us know your preferences, and thank you so much for your willingness to meet!

David

---

**From:** Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us>
**Sent:** Friday, January 31, 2025 8:26 AM
**To:** Glaser, David <dglaser@fredlaw.com>
**Cc:** Sertich, Manda <msertich@fredlaw.com>
**Subject:** RE: NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment

**CAUTION: EXTERNAL E-MAIL**

---

Good morning, David;

Thank you for reaching out and my apologies for the delay in a response. I also understand there are ongoing conversations between NUWAY and the USAO, so I look forward to hearing more about the outcome of those negotiations.

DHS is very much invested in finding a solution in light of the pending effective date of the payment withhold. Our licensing and SUDT policy staff would like to set up a meeting with NUWAY, ideally this coming Monday afternoon or on Tuesday, to discuss next steps to ensure client continuity of care. At this point, DHS is not representing that there will be any changes to the current payment withhold notice, but we recognize NUWAY and DHS have the same goal: to ensure clients are not left without housing or treatment.

Would there be a time on Tuesday, February 4 that works for you and NUWAY to

meet for this discussion? I can extend a Teams invite to those you'd like to be a part of the meeting. The only time on Tuesday that I'm aware of that would not work is 10am-11am.

If Tuesday is impossible, let me know and we can figure out another time that best works for everyone.

Thank you and I look forward to hearing from you,

**Betsy Schollmeier**
Chief Legal Counsel
OIG Legal Counsel's Office
[Pronouns](): (she/her)

**Office of Inspector General**
**Minnesota Department of Human Services**
P.O. Box 64953
Saint Paul, MN 55164-0953
O: 651-431-6577
F: 651-431-7673
[mn.gov/dhs]()
<image001.jpg>
<image002.png>
<image003.png>
<image004.png>
<image005.jpg>
<image006.jpg>

---

**From:** Glaser, David <dglaser@fredlaw.com>
**Sent:** Thursday, January 30, 2025 5:58 PM
**To:** Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us>; Johnson, Thomas S (DHS) <thomas.s.johnson@state.mn.us>; Fee, Mary (GOV) <Mary.Fee@state.mn.us>
**Cc:** Sertich, Manda <msertich@fredlaw.com>; Drucker, Jeremy (MMB) <Jeremy.Drucker@state.mn.us>; Parker, Kevin (GOV) <Kevin.Parker@state.mn.us>
**Subject:** RE: NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment

> **This message may be from an external email source.**
> Do not select links or open attachments unless verified. Report all suspicious emails to Minnesota IT Services Security Operations Center.

Hi. I know you are super busy but I am following up on my note from Tuesday because unless the payment suspension is lifted NUWAY will cease to exist. (Jeremy and Kevin, you were not included on my original note, but it appears below.) I suspect you are aware of the KARE11 story that came out today. Now that NUWAY staff are all fully aware of the upcoming payment suspension, the rush to find new jobs has begun. An organization that is about to lose the bulk of its revenue is not viable.

NUWAY is willing to try to reach a settlement that would result in getting some money back to the state. If the payment suspension is imposed, that won't happen, AND people in treatment will suffer.

I would welcome a chance to talk with you about possible solutions to this. In the meantime I just want to stress one point. There has been a lot of high profile fraud against DHS. People have billed for services not provided. That is NOT the case with NUWAY. There are two allegations, the housing subsidy NUWAY pays to independent recovery residences, and the billing for multiple billing sessions on one day. As the KARE11 reporter noted, there can be no doubt that DHS was fully aware of NUWAY's housing program. That should not be the basis of a payment suspension. As for the billing, I totally understand the argument that NUWAY should have chosen to bill differently, but as a lawyer, I feel strongly that the way the billed was consistent with DHS' instruction prior to the September 2024 change. Perhaps most importantly, they weren't doing anything to hide their practice; records accurately described exactly what was going on. BCBS audited NUWAY, and at the end of the audit concluded that no action was necessary.

I recognize that you may disagree with my assessment on the billing issue. But assuming I am wrong, the question is "what penalty should NUWAY face?" If you believe that they should face the death penalty, then the payment suspension makes sense. But if you believe that there is ANY alternative remedy short of the death penalty that is appropriate, please lift the payment suspension so we can reach that resolution because when 90 percent of your patients are Medicaid recipients, a Medicaid payment suspension is the death penalty.

Thanks for your consideration.

David

---

**From:** Glaser, David
**Sent:** Tuesday, January 28, 2025 4:23 PM
**To:** Schollmeier, Betsy J (DHS) <betsy.schollmeier@state.mn.us>; Johnson, Thomas S (DHS) <thomas.s.johnson@state.mn.us>; Fee, Mary (GOV) <mary.fee@state.mn.us>
**Cc:** Sertich, Manda <msertich@fredlaw.com>
**Subject:** NUWAY: I know you are dealing with a HUGE crisis, but I am hoping I can still get your attention for a moment

Good afternoon. I know that the Federal payment issues have to be taking up all of your attention right now, so I feel bad sending this, but we are about to hit a cliff for NUWAY that is existential. There is a new payment suspension set to take effect February 21. NUWAY has to decide now if it is shutting down (the IOP funds help fund residential, so if there is no IOP payment, there isn't really a path forward for the organization) or continuing.

I don't know if we are going to be able to reach a quick settlement with the Federal Government or the case will go to litigation. Litigation is certainly possible. But I know this:

IF THERE IS A PAYMENT SUSPENSION IMPOSED, THE STATE WILL EFFECTIVELY GET NOTHING. IF THE STATE WITHDRAWS THE PAYMENT SUSPENSION, EITHER NUWAY WILL PREVAIL IN LITIGATION, IN WHICH CASE THE SUSPENSION SHOULD NEVER HAVE BEEN IMPOSED, OR THE GOVERNMENT WILL PREVAIL, AND THE STATE WILL GET MONEY.

In other words, the worst outcome for the state is imposing a payment suspension; withdrawing the suspension gives the state the possibility of a significant recovery and can't yield a result worse that imposing the suspension.

And that doesn't even factor in the very real human cost of losing NUWAY.

The state can, with s stroke of a pen, avoid a situation that will take 1,000 people in recovery and send them out to find new care, and also increase the chances that the state coffers will see money. One might think that the

payment suspension is low risk, but if NUWAY has to close, its remaining funds will be spent paying staff to shut down leaving nothing to recover.  The payment suspension is the highest risk path for the state.

I was going to propose that the 3 of us try to have a quick conversation.  I suspect that actions by the Federal Government make that nearly impossible, but if you have the time, I would welcome that chance.

I will close by begging you, not as a counsel for NUWAY, but as a parent of a child in recovery, to withdraw the payment suspension and allow the legal dispute to play itself out.  Please help us avoid a very real human real cost that is totally preventable.  Thanks for your consideration.  Obviously, time is of the essence here.  I know you are busy, but if you could let me know your thoughts I would appreciate it.

David

**David Glaser**
Shareholder
Chair - Health Care Fraud & Compliance
dglaser@fredlaw.com

Fredrikson & Byron, P.A.  /  60 South Sixth Street  /  Suite 1500  /  Minneapolis, MN 55402-4400
**main** 612-492-7000  **direct** 612-492-7143
**web** fredlaw.com  **assistant** Jamie Davis 612-492-7619

This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client privilege or the attorney work product doctrine. If you are not the addressee, please note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number 612-492-7000.

**Caution: This e-mail and attached documents, if any, may contain information that is protected by state or federal law. E-mail containing private or protected information should not be sent over a public (nonsecure) Internet unless it is encrypted pursuant to DHS standards. This e-mail should be forwarded only on a strictly need-to-know basis. If you are not the intended recipient, please: (1) notify the sender immediately, (2) do not forward the message, (3) do not print the message and (4) erase the message from your system.**