# Exhibit F

| | |
|---|---|
| **From:** | Glaser, David |
| **Sent:** | Thursday, October 31, 2024 1:22 PM |
| **To:** | Johnson, Thomas S (DHS) |
| **Cc:** | Novak, Amanda E (DHS); Jahnke, Cynthia B (DHS); Oberg, Corrie A (DHS); Sertich, Manda; Fee, Mary (GOV) |
| **Subject:** | NUWAY Temporary Payment withholding |
| **Attachments:** | NUWAY Site Visit Agenda.pdf; NUWAY Circle of Excellence Application.pdf; Phone call to OIG Re RISE.pdf |

Good afternoon. I would like to follow-up on our communications over the last eight months regarding the possible suspension of payments to NUWAY. As you know, the suspension has been delayed until December 16th. I have become aware of some communications that should cause the Department to withdraw the notice. I believe that the main issue prompting the payment suspension has been the R.I.S.E program. Under R.I.S.E., NUWAY clients are eligible to receive a subsidy to a recovery residence. Some have questioned whether that offer constitutes a kickback. While I have many thoughts about what supports the legality of the program, here I want to focus solely on one key point: the Department has been fully aware of the program for at least 5 years, so there is no basis to assert the program gives rise to a "credible allegation of fraud," which is the standard for suspending payments.

I am attaching three documents. The first is an agenda of a site visit that occurred on April 5, 2019. Patina Thomas, Jeffrey Hunsburger, Kristine Davis and another DHS staffer met with four NUWAY professionals and heard about the R.I.S.E. program. I have highlighted some of the key language in yellow. I believe that meeting, by its own, would constitute comprehensive notice to the Department about the program. There is, however, another document that is even more explicit in its description of the program. In 2019 NUWAY applied for the Department of Human Services Circle Commission of Excellence Award. I have attached an excerpt from that application, once again highlighting some of the key language. (See the 6th page.). As you can see, the application explained how "all NUWAY clients are eligible to receive recovery residence subsidization contingent upon weekly treatment compliance reflecting outcome-based goals (sobriety, attendance, behavior, etc.)." The Commissioner was told "NUWAY offers this subsidization from their own resources and there is no additional cost to the client or third-party payor." The application lays out exactly the features that those asserting that the program is problematic point to as impermissible. To be clear, I think that those who have claimed that the program is improper are wrong and that the program is legal. But the question of whether the program is legal is outside the scope of my note because the payment suspension is premised solely on fraud. Even if the program is illegal, as long as there is no "credible allegation of fraud" there is no basis for a payment suspension.

In light of the fact that the program was fully disclosed to the Commissioner's Office back in 2019, there's no legitimate basis for characterizing the program as "fraudulent." In this note I am not going to provide all of the details of the many other times that NUWAY has publicly described the program, be it as part of its Annual Report, its website or brochures, or its payor contracts. I am happy to provide that if you would like. But for now I am focusing almost exclusively on disclosure directly to DHS. NUWAY applied for an award from the Commissioner because it felt (and still feels) that the program is good for clients. That application explained all of the salient details of the program directly to the Commissioner. In light of that, there is no basis to assert that there is a credible allegation of fraud.

I will add one more disclosure. In 2019 NUWAY also discussed R.I.S.E. with the state OIG. I am attaching emails that describe the lead-up to that call. While I don't have anything about the call itself, there is no real doubt that the OIG heard a description of the R.I.S.E. program in 2019. Organizations engaging in fraudulent conduct don't call the OIG and describe it.

I realize that there is also a question about some of NUWAY's billing. But as I explained in my earlier correspondence with you, NUWAY brought that issue to the US Attorney's office, indicating that it was prepared to make a refund but asking whether we should make the refund or wait. The US Attorney's office instructed us to wait, and we have. Given that NUWAY raised the issue with the government, that cannot serve as the basis of a credible allegation of fraud. I will add that the relevant language in the Manuals was changed on September 4th of this year, presumably because the Department recognized the language was misleading.

In light of this, we ask that DHS withdraw the notice of the payment suspension. Payment suspensions require credible allegations of FRAUD. An overpayment, or disagreement about the interpretation of a provision is not fraud, because fraud requires deception. NUWAY's transparent conduct here does not permit a conclusion that any allegations of fraud are credible.

I would appreciate it if you could let me know your thoughts.

Thanks, and Happy Halloween.

David

**David Glaser**
Shareholder
Chair - Health Care Fraud & Compliance
dglaser@fredlaw.com

Fredrikson & Byron, P.A. / 60 South Sixth Street / Suite 1500 / Minneapolis, MN 55402-4400
**main** 612-492-7000 **direct** 612-492-7143
**web** fredlaw.com **assistant** Jamie Davis 612-492-7619

This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client privilege or the attorney work product doctrine. If you are not the addressee, please note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number 612-492-7000.

*ONSITE REVIEW OF NUWAY BY BEHAVIORAL HEALTH DIVISION*

**Objectives of the visit:**

- Acquaint alcohol and drug DHS staff with the NUWAY programming with a special emphasis on RISE and acquaint housing support DHS staff with RISE model.
- Conduct a DHS site visit asking standard questions they have in a conversational way.
- Opportunity to hear directly from the state and their thoughts about our programming.
- Opportunity to hear from the state how they see the future development of SUD.

Side notes:

- DHS prefers to see our outpatient services and recovery residences. The agenda has been amended.
- DHS has standard questions they plan to ask and need about 45 min.
- Already they have noted there will be several questions about how our recovery residence program works.

**Attending:**

DHS:        Patina Thomas, Jeffrey Hunsburger, Kristine Davis, +1 more

NUWAY:    Ken Roberts, Monique Bourgeois, Sam Woolery, Amy Dellwo,
              (Angela Hanson stop in during lunch?)

**Agenda:**

12:00    **Introductions, lunch, NUWAY background**

NUWAY will plan to give some background on the work we do.  Consider using PP base from orientation and adapt it.  A few items to perhaps bring up head on/emphasize

✓ Address that we are embarking on a Joint Commission certification
✓ Address the U of M study
✓ Recovery Residences

12:30    **DHS site visit questions**

They will provide industry insight and a state perspective if we ask.

1:15    **Walk over to NUWAY Counseling Center 2118 Outpatient Treatment**

2118 Blaisdell Avenue South, Program Director Kristin Juntunen

Protected by 42 CFR Part 2 - Do
Not Release

**1:50**  Drive to one of our Recovery Residence partner homes in Minneapolis

Helen's House, women's recovery residence program fee $700/mo.
Example of a home with a higher program fee than NUWAY covers ($550)

**2:30**  Drive to a Recovery Residence partner home in St. Paul

Spirit House, men's recovery residence program fee $550/mo.
Example of a home with a program fee that NUWAY covers ($550)

**3:15**  End tour and final questions/follow up

Protected by 42 CFR Part 2 - Do
Not Release

NUWAY site visit April 5, 2019 from 12 noon – 3:30

Preparation:

1. Prepare folders of information for visitors
2. Order lunch for 10 from the Wedge  https://tccp.coop/catering/order-now
3. Contact site directors regarding visit
4. Verify with Sam the recovery residences that we will be attending and addresses
5. Check to see if Angela would like to stop in to talk about our licensing review and correction status.
6. Check to see if Kristi Strang would like to join us for the visit.
7.

Protected by 42 CFR Part 2 - Do
Not Release

# NUWAY friends

**From:** Amy Dellwo <amy.dellwo@nuway.org>
**To:** "Barb Madigan (barb.madigan@yahoo.com)" <barb.madigan@yahoo.com>, "Dave Wellstone (davewellstone@yahoo.com)" <davewellstone@yahoo.com>
**Cc:** Kenneth L. Roberts <ken.roberts@nuway.org>, Monique Bourgeois <monique.bourgeois@nuway.org>, Sam Woolery <sam.woolery@nuway.org>
**Date:** Tue, 09 Apr 2019 15:08:51 +0000
**Attachments:** Circle of Excellence Award 2019 Nomination.docx (22.77 kB); 4.27.18-RISE-brochure.pdf (4.45 MB)

Good morning friends,

I received confirmation this morning that the nomination of NUWAY for the Circle of Excellence Awards has been received by DHS. Please find attached the text used in the nomination submission. The online form did not lend itself to printing a final copy. Additionally, I included that attached brochure on RISE.

The coordinator for the Circle of Excellence Awards is Amy Barrett. She may get in contact with you in the future. In terms of timing they tend to announce awardees in August. Typically they won't assemble their review committee until after the legislative session has concluded. I would anticipate if you were going to get questions it will be in June or July. The review committee is a group of about seven people from across DHS representing the various policy areas.

We appreciate your support and thank you for your strong partnership and the work that you do.

With gratitude,

NUWAY team


Amy Dellwo, BS, MA
Public Policy Director



NUWAY

Administrative Offices
2217 Nicollet Avenue S
Minneapolis, MN 55404
P: 651-404-2008
F: 612-767-0301
nuway.org

CONFIDENTIALITY NOTICE: The contents of this transmission are intended solely for the individual(s) named in

Protected by 42 CFR Part 2 - Do
Not Release

the TO: line above and may contain confidential information protected by federal confidentiality rules (42 CFR part 2). These rules prohibit the reader from further disclosing this information unless expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR part 2. If the reader of this transmission is not the intended recipient or his or her authorized agent, the reader is notified that any dissemination, distribution or copying of this e-mail is prohibited. Please direct any concerns to: privacy@nuway.org

Protected by 42 CFR Part 2 - Do Not Release

NUWAY009627_0002

# nuway

# Recovery
## In
## Supportive
## Environments

**Extending care with safe, sober living support**

Since 1966

**Outpatient Locations**

**3R's NUWAY Counseling Center**
1404 Central Avenue North East
Minneapolis, MN 55413
Phone: 612-789-8030
Fax: 612-789-8087

**2118 NUWAY Counseling Center**
2118 Blaisdell Avenue South
Minneapolis, MN 55404
Phone: 612-235-4677
Fax: 612-872-8855

**St. Paul NUWAY Counseling Center**
545 West Seventh Street
St. Paul, MN 55102
Phone: 651-309-0399
Fax: 651-666-2914

**www.NUWAY.org**



## Defining R.I.S.E.

Recovery in Supportive Environments (R.I.S.E.) utilizes evidence based models of care connecting substance use disorder treatment with (subsidized) recovery residence support.

NUWAY's nonprofit mission has always been to provide extended care treatment for individuals in supportive environments. The R.I.S.E. model continues that tradition by linking outpatient treatment and recovery residence support.



Protected by 42 CFR Part 2 - Do Not Release

NUWAY009628_0001

# HOW IT WORKS

## Outpatient Services

NUWAY outpatient clients have the option to live in independently run recovery residences, located in the community of their choice, and have their housing program fees subsidized while they attend treatment. Additionally, clients recieve:

- Twenty hours of licensed co-occurring treatment per week
- One meal during each day of service
- Transportation assistance
- No cost drug testing
- Evidence based modalities







3R's NUWAY Counseling Center



## Recovery Residence Support

NUWAY utilizes 50+ independent providers of sober living throughout the Twin Cities. Recovery residence support:

- Provides a choice in sober living
- Offers safe, supportive sober environment
- Is community based
- Is ASAM (dimension six) focused
- Is an evidence based practice
- Is available for the duration of treatment

*"Johns Hopkins University School of Medicine reports...that those who attend day treatment and live in a sober living facility or drug-free housing are 10 times more likely to avoid relapse."*

## Client Benefits & Outcomes

- Removes housing barrier early in recovery
- Clients can remain in sober living regardless of receiving services
- Empowers client self-efficacy and choice
- Designed to use fewer hours over a longer period of time allowing clients the extended time needed to establish recovery in their community
- Allows clients to work and/or go to school
- Follows best practice

2118 NUWAY Counseling Center



St. Paul NUWAY Counseling Center



Protected by 42 CFR Part 2 - Do Not Release

NUWAY009628_0002

**Annual DHS Commissioner Circle of Excellence Awards**

*Background information*

The Commissioner's Circle of Excellence Awards recognize excellence among human services providers, counties, tribes, advocacy groups and other organizations that work in partnership with the Minnesota Department of Human Services to help people meet their basic needs so they can live in dignity and achieve their highest potential.

Organizations recognized with Commissioner's Circle of Excellence Awards demonstrate significant initiative and/or innovation in serving human services program clients. See below for additional criteria. While individuals also make marked differences in the lives of Minnesotans, these awards celebrate organizations. Please do not nominate an individual.

Award criteria:

- ✓ Supports the DHS mission to help people meet their basic needs so they can live in dignity and achieve their highest potential
- ✓ Contributes to current DHS goals and priority projects
- ✓ Demonstrates best practices
- ✓ Achieves results that impact clients
- ✓ Partners with others in the human services system

Nominations are due by 5 p.m. Monday, April 15, 2019.

Barb Madigan – Spirit House

David Wellstone – Safe Haven

**PROVIDE A BRIEF DESCRIPTION OF THE ORGANIZATION'S OVERALL WORK:**

*Incorporated in 1966, NUWAY began as a grass roots effort within the recovery community to provide extended care treatment services. Over the past 50 years, NUWAY has served more than 45,000 men and women in recovery by providing individualized lengths of stay in residential and intensive outpatient co-occurring substance use and mental health disorder treatment programs.*

Their clients often experience co-occurring substance use and mental health disorders; lack supportive recovery environments, following episodes of short-term, high intensity treatment and need extended care to establish their recovery in the community.

Protected by 42 CFR Part 2 - Do Not Release

NUWAY has uniquely integrated recovery housing resources with evidence-based clinical treatment to create an effective recovery management system. The R.I.S.E. (Recovery In Supportive Environments) model supports a positive recovery environment for clients during their engagement with NUWAY's Intensive Outpatient Programs (IOP). The IOP service delivery is person-centered and stage matched to support client choice. All NUWAY clients are eligible to receive recovery residence subsidization contingent upon weekly treatment compliance reflecting outcome-based goals (sobriety, attendance, behavior, etc.). Clients have a choice whether they would like to participate in the R.I.S.E. program and 85 percent of the time they elect to do so.  Those who do utilize R.I.S.E. have a choice between 60 different independent community partner providers yielding more than 180 addresses to choose from. NUWAY is committed to helping clients be successful in recovery and provides $550 per month towards the program fee at a recovery residence home so they have a safe and sober residence to come home to while in treatment with NUWAY.  NUWAY offers this subsidization from their own resources and there is no additional cost to the client or third-party payor.  In addition to safe housing NUWAY provides the following to their clients: 20 hours of outpatient treatment, one meal each day of service, no cost drug testing, transportation assistance, care coordination, peer support, family support and recovery management skills. Please find the attached brochure for reference.

DHS recently conducted an evaluation and the data shows many individuals receiving behavioral health treatment are cycling in and out of residential treatment and homelessness. During state fiscal year 2018, 10,117 people exited residential mental health or substance use disorder treatment. Of those, nearly 1 out of every 8 people exited directly into homelessness. Of those that exited into homelessness, nearly 1 out of every 4 people re-entered a residential treatment facility within the same year.  To address this the 2019 Governor's budget (page 90) includes a proposal to assist people leaving residential services by allowing for presumptive eligibility for housing supports.

NUWAY, in 2014, also recognized the vulnerability many clients face when newly in recovery.  Simply put a person cannot focus effectively on their recovery work if they are housing insecure.  At NUWAY, they are working to change the paradigm of how substance use disorder treatment is being delivered. They serve clients in the same communities where they live while encouraging them to develop new healthy support systems in their community and manage their recovery long-term.  Dave Wellstone shares, "Safe Haven provides both men's and women's sober housing to NUWAY clients and have seen firsthand many lives that have been changed by their program."

NUWAY has uniquely integrated recovery housing resources with evidence-based clinical treatment to create an effective recovery management system. The R.I.S.E. (Recovery In Supportive Environments) model supports a positive recovery environment for clients during their engagement with NUWAY's Intensive Outpatient Programs (IOP). The IOP service delivery is person-centered and stage matched to support client choice. Clients have a choice whether they would like to participate in the R.I.S.E. program

and 85 percent of the time they elect to do so. Those who do utilize R.I.S.E. have a choice between 60 different independent community partner providers yielding more than 180 addresses to choose from.

All NUWAY clients are eligible to receive recovery residence subsidization ($550 paid to an independent recovery residence by NUWAY) contingent upon weekly treatment compliance reflecting outcome-based goals (sobriety, attendance, behavior.) NUWAY has been tracking client progress and more than 60 percent of their clients are fully engaged and compliant with 20 hours of treatment weekly. By NUWAY combining intensive outpatient and recovery residence support they have created a unique continuum which addresses the dimensions identified by SAMHSA as promoting a life in recovery (community, home, health, and purpose).

Additionally, once a client reaches completion of treatment at NUWAY, they have the option to remain in their recovery residence if they choose and pay the program fee, further reducing barriers to long-term recovery. Saint Paul Spirit House (an independent recovery residence) has been in operation for over 15 years and started a partnership with NUWAY in 2016. Barb Madigan, owner of Spirit House, recounts, "When I was first approached by NUWAY to be a provider partner I was reluctant to accept the partnership because I was afraid that we would have to adopt NUWAY's rules and lose our identity. That has not happened, Spirit House remains independent." Ms. Madigan states, "I have experienced NUWAY's clients who have had a chance to live in community and use the tools that they are learning at NUWAY. Their clients are thriving in my residences. The NUWAY counselors do a great job in communicating with our residences to give the client the best chance at a successful outcome."

Research shows that treatment engagement over a longer period produces the most positive life outcomes for individuals being treated for substance use disorders. After four years of implementing this model and serving nearly 7100 clients, NUWAY is improving outcomes for clients in a variety of areas and have commissioned an independent study through the University of Minnesota to objectively evaluate. NUWAY's work also models on a large scale, and over several years, what the 2019 Governor's budget contemplates with presumptive eligibility to housing supports.

DESCRIBE THE ORGANIZATION OR PROJECT'S CONNECTION TO MINNESOTA DEPARTMENT OF HUMAN SERVICES, IF ANY:

NUWAY is not simply in the business of treating addiction. NUWAY's practice in SUD recovery is about changing people's lives from the very center out to all aspects of their life. NUWAY assists its client in repairing relationship, expanding their connections in community, addressing the behaviors that inhibit success, creating a foundation for success in life through employment, housing, addressing the chronic disease that is addiction and achieving their highest potential.

In 2018 NUWAY was the provider of residential and outpatient services for 3,600 clients. Over 85% of the clients NUWAY serves are Medicaid eligible and many are housing insecure. Through the R.I.S.E program NUWAY provides clients with a safe and sober environment by subsidizing their program fee with one of their independent recovery residence community partners at no cost to the client or third-party payor. Additionally, NUWAY ensures all clients have access to a meal every day (again at no cost to the client or third-party payor.) NUWAY is attending to a client's basic needs for food and shelter while treating the client for addiction or a co-occurring disorder. While in treatment NUWAY staff work

Protected by 42 CFR Part 2 - Do Not Release

with clients to seek employment and building a plan for sustaining long-term recovery in their community. The recovery residence partners deepen the client's health community connections through supportive connections with housemates and their network of community contacts. NUWAY, along with its partners, is serving the mission of the Department of Human Services on several levels.

NOTE:

On September 7, 2019 NUWAY is hosting its annual picnic. Invited to the picnic are current and past clients, NUWAY staff, recovery resident partners and any community friends and neighbors that would like to join us. The last couple years this event has drawn about 1000 people. If NUWAY is selected as an awardee this may be a great event/venue for the Commissioner to attend and join the celebration of recovery. In the past the Minneapolis Mayor has also attended.

NOTE:

We may want to provide a link to the NUWAY video.

NOTE:

Amy Barrett is the coordinator of the Circle of Excellence Awards this year. 651-431-4992 and Amy.Barrett@state.mn.us

ADDITIONAL INFORMATION TO DRAW FROM IF NEEDED.

We support additional time in treatment by substantially reducing treatment costs.

• Supports safety & stability • Encourages social development • Supports ability to access daily treatment services • Enhances treatment compliance • Offers opportunity to develop autonomy

Removes housing barrier early in recovery • Clients can remain in a recovery residence regard- less of whether receiving services from NUWAY • Empowers client self-efficacy and choice • Designed to use fewer hours over a longer period allowing client the extended time needed to establish recovery in their community • Allows clients to work and/or go to school • Follows best practice

NUWAY outpatient clients have the option to live in independently run recovery residences, located in the community of their choice, and have their housing program fees subsidized while they attend treatment.

Additionally, clients receive:

• Twenty hours of licensed co-occurring treatment per week • One meal during each day of service • Transportation assistance • No cost drug testing • Evidenced based modalities

Recovery Residence Support is provided by over 60 independent providers of sober living throughout the Twin Cities. All recovery residence programs are subjected to formal screening prior to utilization with any client. NUWAY neither owns any recovery housing nor dictates any policy to recovery housing partners.

Recovery residence support:

• Provides a choice in sober living • Offers safe, supportive sober environment • Is community based • Is ASAM (dimension six) focused • Is an evidence-based practice • Is available for the duration of treatment

# Re: House HHS omni bill question

**From:** Amy Dellwo <amy.dellwo@nuway.org>
**To:** "Demm, Nicolas A (DHS)" <nicolas.demm@state.mn.us>
**Date:** Fri, 12 Apr 2019 17:04:28 +0000

Thanks. Will let you know how it goes.

Get Outlook for Android

**From:** Demm, Nicolas A (DHS) <nicolas.demm@state.mn.us>
**Sent:** Friday, April 12, 2019 11:57:39 AM
**To:** Amy Dellwo
**Subject:** RE: House HHS omni bill question

No, that's OK. Just go ahead and give her a call. 1-4356.

Best,
Nic

**From:** Amy Dellwo [mailto:Amy.Dellwo@Nuway.org]
**Sent:** Friday, April 12, 2019 11:54 AM
**To:** Demm, Nicolas A (DHS) <nicolas.demm@state.mn.us>
**Subject:** Re: House HHS omni bill question

Is it ok to call her? I wanted to discuss the RISE model at NUWAY. Maybe we can do a three-way call?

Get Outlook for Android

Amy Dellwo, BS, MA
Public Policy Director



Administrative Offices
2217 Nicollet Avenue S
Minneapolis, MN 55404
P: 651-404-2008
F: 612-767-0301
nuway.org

NUWAY032712_0001

CONFIDENTIALITY NOTICE: The contents of this transmission are intended solely for the individual(s) named in the TO: line above and may contain confidential information protected by federal confidentiality rules (42 CFR part 2). These rules prohibit the reader from further disclosing this information unless expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR part 2. If the reader of this transmission is not the intended recipient or his or her authorized agent, the reader is notified that any dissemination, distribution or copying of this e-mail is prohibited. Please direct any concerns to: privacy@nuway.org

**From:** Demm, Nicolas A (DHS) <nicolas.demm@state.mn.us>
**Sent:** Friday, April 12, 2019 11:52:20 AM
**To:** Amy Dellwo
**Subject:** RE: House HHS omni bill question

Yes, please send it over to me and JJ.

**Nicolas Demm**
Legislative and Policy Liaison | Children and Family Services/Operations

**Minnesota Department of Human Services**
PO Box 64244
St. Paul, MN 55164-0244
O: 651-431-2799
C: 651-331-1797
mn.gov/dhs



**DEPARTMENT OF HUMAN SERVICES**



**From:** Amy Dellwo [mailto:Amy.Dellwo@Nuway.org]
**Sent:** Friday, April 12, 2019 11:51 AM
**To:** Demm, Nicolas A (DHS) <nicolas.demm@state.mn.us>
**Subject:** Re: House HHS omni bill question

This does help. I have an example that I would like to run through someone that would be in a position of "interpreting" for the purpose of implementing the language. Who is the best contact in OIG? JJ? Or someone else?
Ciao,

Get Outlook for Android

Amy Dellwo, BS, MA
Public Policy Director



**nuway**

Administrative Offices
2217 Nicollet Avenue S
Minneapolis, MN 55404
P: 651-404-2008
F: 612-767-0301
nuway.org

CONFIDENTIALITY NOTICE: The contents of this transmission are intended solely for the individual(s) named in the TO: line above and may contain confidential information protected by federal confidentiality rules (42 CFR part 2). These rules prohibit the reader from further disclosing this information unless expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR part 2. If the reader of this transmission is not the intended recipient or his or her authorized agent, the reader is notified that any dissemination, distribution or copying of this e-mail is prohibited. Please direct any concerns to: privacy@nuway.org

**From:** Demm, Nicolas A (DHS) <nicolas.demm@state.mn.us>
**Sent:** Friday, April 12, 2019 10:10:43 AM
**To:** Amy Dellwo
**Subject:** RE: House HHS omni bill question

Hi Amy,

It is based on the federal anti-kickback statute (AKS), and would establish a law and criminal penalties in Minnesota for receiving or paying "kick-backs" in human services programs. It is not federal conformity in the sense that we are being required to implement the law by a certain date in Minnesota, but it "conforms" with the federal statute and ensures that Minnesota has a law against receiving or paying public program kick-backs that aligns with the federal prohibitions for such activity.

The language comes from FFAID, and as such is anti-fraud language. It applies to human services programs generally, including instances of Medicaid or CCAP fraud. To put the intent of the language into more concrete terms, both the federal law and this language would prohibit instances in which a provider recruits or solicits individuals eligible for benefits or services, and pays them a portion of those benefits in return (regardless of whether or not services are actually being provided).

Let me know if that helps clarify things. And it was nice seeing you too! I hope all is well!

**Nicolas Demm**
Legislative and Policy Liaison | Children and Family Services/Operations

**Minnesota Department of Human Services**
PO Box 64244
St. Paul, MN 55164-0244
O: 651-431-2799
C: 651-331-1797
mn.gov/dhs

 **DEPARTMENT OF HUMAN SERVICES**



**From:** Amy Dellwo [mailto:Amy.Dellwo@Nuway.org]
**Sent:** Thursday, April 11, 2019 11:18 PM
**To:** Demm, Nicolas A (DHS) <nicolas.demm@state.mn.us>
**Subject:** House HHS omni bill question

Hey Nic!

In the OPS section of the bill – sec. 126 – what is the background on this language (pasted language below and summary from House Research). Is it federal conformity? Language from the federal opioid bill that passed in Sept. 2018? Just want to be sure I am tracking correctly.

Nice to see you the other day. You look like you are in the right job!!

A

Criminal penalties for acts involving human services programs. Creates § 609.817.
Subd. 1. Prohibited payments made relating to human services programs. Creates a felony offense for knowingly and willfully offering payment to a person to induce that person to: (1) apply for or receive, or induce another person to apply for or receive, a human services benefit; or (2) purchase, lease, order, or arrange for the purchase, lease, or order of any good, facility, service, or item administered or funded by the DHS.
Subd. 2. Receipt of prohibited payments relating to human services programs. Creates a felony offense for knowingly and willfully soliciting or receiving payment in return for: (1) applying for or receiving a human services benefit, service, or grant; or (2) purchasing, leasing, ordering, or arranging for the purchase, lease, or order of any good, facility, service, or item for which payment may be made by DHS or a local social services agency.
Subd. 3. Payments exempt. Specifies this section does not apply to remuneration exempted from the federal Anti-Kickback laws and regulations.
Subd. 4. Penalties. Specifies criminal penalties for persons who violate subdivision 1 or 2.
Subd. 5. Aggregation. Allows the value of the money, property, or services received by the defendant within any six-month period to be aggregated in any prosecution.
Subd. 6. Venue. Specifies the venue for prosecution.
Subd. 7. False claims. Specifies a claim that includes items or services resulting from a violation of this section constitutes a false claim.
Subd. 8. Actual knowledge or specific intent not required. Specifies a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

Sec. 126.

NUWAY032712_0004

[609.817] CRIMINAL PENALTIES FOR ACTS INVOLVING HUMAN SERVICES PROGRAMS.

Subdivision 1.

Prohibited payments made relating to human services programs.

A person is in violation of this section if the person knowingly and willfully offers or pays any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind, to another person:

(1) to induce that person to apply for, receive, or induce another person to apply for or receive an item or service for which payment may be made in whole or in part by a local social services agency as defined in chapter 393 or by the Department of Human Services, or administered by the commissioner of human services; or

(2) in return for purchasing, leasing, ordering, or arranging for or inducing the purchasing, leasing, or ordering of any good, facility, service, or item for which payment may be made in whole or in part, or which is administered in whole or in part by a local social services agency as defined in chapter 393, the Department of Human Services, or the United States Department of Health and Human Services.

Subd. 2.

Receipt of prohibited payments relating to human services programs.

A person is in violation of this section if the person knowingly and willfully solicits or receives any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind:

(1) in return for applying for or receiving a human services benefit, service, or grant for which payment may be made in whole or in part by a local services agency as defined in chapter 393 or the Department of Human Services, or is administered by the commissioner of human services; or

(2) in return for purchasing, leasing, ordering, or arranging for or inducing the purchasing, leasing, or ordering of any good, facility, service, or item for which payment may be made in whole or in part, or which is administered in whole or in part, by the Department of Human Services, a local social services agency as defined in chapter 393, or the United States Department of Health and Human Services.

Subd. 3.

Payments exempt.

This section does not apply to remuneration exempted from the Anti-Kickback Statute under United States Code, title 42, section 1320a-7b(b)(3), or remuneration excepted from liability by Code of Federal Regulations, title 42, section 1001.952.

Subd. 4.

Penalties.

(a) A person who violates subdivision 1 or 2 may be sentenced according to section 609.52, subdivision 3.

(1) For a violation of subdivision 1, for the purposes of sentencing under section 609.52, subdivision 3, the calculated value is equal to the value of the good, facility, service, or item that was obtained as a direct or indirect result of the prohibited payment.

(2) For a violation of subdivision 2, for the purposes of sentencing under section 609.52, subdivision 3, the calculated value is equal to the value of the prohibited payment solicited or received in violation of subdivision 2.

NUWAY032712_0005

(b) A claim for any good, facility, service, or item rendered or claimed to have been rendered in violation of this section is noncompensable and unenforceable at the time the claim is made.

Subd. 5.

Aggregation.

In any prosecution under this section, the value of the money or property or services received by the defendant within any six-month period may be aggregated and the defendant charged accordingly in applying the provisions of subdivision 6.

Subd. 6.

Venue.

Notwithstanding section 627.01, an offense committed under this section may be prosecuted in the county where any part of the offense occurred, provided that when two or more offenses are committed by the same person in two or more counties, the accused may be prosecuted in any county in which one of the offenses was committed for all of the offenses aggregated under this subdivision.

Subd. 7.

False claims.

In addition to the penalties provided for in this section, a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of section 15C.02.

Subd. 8.

Actual knowledge or specific intent not required.

With respect to a violation of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

Amy Dellwo, BS, MA
Public Policy Director



NUWAY

Administrative Offices
2217 Nicollet Avenue S
Minneapolis, MN 55404
P: 651-404-2008
F: 612-767-0301
nuway.org

CONFIDENTIALITY NOTICE: The contents of this transmission are intended solely for the individual(s) named in the TO: line above and may contain confidential information protected by federal confidentiality rules (42 CFR part 2). These rules prohibit the reader from further disclosing

this information unless expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR part 2. If the reader of this transmission is not the intended recipient or his or her authorized agent, the reader is notified that any dissemination, distribution or copying of this e-mail is prohibited. Please direct any concerns to: privacy@nuway.org

Caution: This e-mail and attached documents, if any, may contain information that is protected by state or federal law. E-mail containing private or protected information should not be sent over a public (nonsecure) Internet unless it is encrypted pursuant to DHS standards. This e-mail should be forwarded only on a strictly need-to-know basis. If you are not the intended recipient, please: (1) notify the sender immediately, (2) do not forward the message, (3) do not print the message and (4) erase the message from your system.