# Exhibit H

provider closures, resulting in lost capacity to serve clients. Withholds are appropriate in some circumstances, but DHS needs additional options that can scale appropriately and allow earlier intervention to protect recipients and public funds while limiting disruptions in service delivery. Medical review agents would be assigned to review providers who are flagged based on more limited and preliminary information. This gives DHS a close look at those claims before issuing payment. At the same time, this is less disruptive to the provider if the claims are valid, resulting in fewer collateral consequences to recipients who need care. Finally, utilizing a pre-payment review can lead to a greater cost avoidance by preventing payments from being dispersed, instead of recouping payments as is current practice.

Oversight of Providers, Managed Care Organizations (MCO), and Minnesota Restricted Recipient Program (MRRP)
The application and enrollment stage is a critical point where PIO can prevent fraud, waste, or abuse. Screeners provide an opportunity for prevention, a way to identify potential problems sooner, and an opportunity to provide technical assistance (TA) to applicants. The ability for a provider to interact in-person with additional screeners will lead to a better chance of success for the provider and DHS-PIO. After enrollment, the next stage is monitoring for program compliance. Auditors can identify provider errors in a proactive manner that will help to prevent more serious issues for providers and build rapport through administering technical assistance. Adding eight staff to conduct MA provider audits will allow DHS to be proactive in identifying fraud, waste, and abuse. Finally, should allegations of fraud, waste, or abuse become present, DHS needs trained investigators to navigate the complex work of substantiating the allegations and the legal system. An additional six investigators and two legal staff will address the increasing number and complexity of cases, leading to a more efficient and responsive approach to allegations of fraud, waste, and abuse.

In addition to monitoring fee-for-service (FFS) clients, DHS is responsible for Managed Care Organizations (MCO) oversight of other Medicaid clients. Currently, approximately 85% of Medicaid clients (over 1 million Minnesotans) are enrolled through one of nine MCOs in Minnesota (Minnesota Managed Care Enrollment Figures Totals Reports (state.mn.us)[1]). As Medicaid shifts from a fee-for-service (FFS) to a managed care (MCO) model, there is a growing need for oversight of compliance for the private MCO companies beyond what the current four positions can efficiently manage. Four additional oversight specialists are necessary to coordinate with and audit the MCO's program integrity and compliance activities.

When a recipient is found to be abusing services, they can be placed in the Minnesota Restricted Recipient Program (MRRP). This program can limit a recipient to one pharmacy, physician, clinic, hospital, etc. to stop the recipient from utilizing multiple providers to commit fraud. A small staff of four to five Registered Nurses (RN) utilize their clinical knowledge and expertise to review medical claims for people on MA for signs of fraud, waste, or abuse. In addition to claims reviews, this area often assists with coordination of care, similar to case managers of an MCO. Lastly, the MRRP team must oversee and provide policies and procedures to the MCOs. The population of clients in the MRRP are often people with co-morbidities, especially with mental health, and present as complex patients. Furthermore, these clients too often fall through the cracks, ending up in emergency health situations, because they lack wrap-around services and effective case management. One contracted position for RN oversight and case review would allow for better care for this vulnerable group of Minnesotans.

Substance Use Disorder (SUD) Rates-Midpoint Rule
In July 2014, DHS issued a bulletin (#14-51-01) to provide instruction to SUD programs in response to the implementation of a new rate setting methodology and base rate payments for SUD treatment services. The bulletin included clarification on the proper utilization of the claim code, H2035 HQ, for SUD group treatment services as defined by the Administrative Uniformity Committee (AUC), a voluntary group consisting of health care public and private payers, hospitals, providers, and state agencies. The AUC defines the H2035 HQ claim code as,

---

[1]

https://www.dhs.state.mn.us/main/idcplg?IdcService=GET_DYNAMIC_CONVERSION&RevisionSelectionMethod=LatestReleased&dDocName=dhs16_141529

"alcohol and/or drug counseling per hour," establishing this code as a time-based code for group treatment services.

In addition to the bulletin, Minn. Stat. 62J.536[2] and related rules require the development and use of Minnesota Uniform Companion Guides (MUCGs) for health care providers that bill under Medical Assistance (MA). *The Minnesota Department of Health's (MDH) Rule: Minnesota Uniform Companion Guide (MUCG) Version [most recent] for the Implementation of the X12/005010X222A1 Health Care Claim: Professional (837)* contains instructions for submitting claims using an SUD group treatment claim code, stating:

> "In the case of time as part of the code definition, follow HCPCS/CPT guidelines to determine the appropriate unit(s) of time to report. Per the guidelines, more than half the time of a time-based code must be spent performing the service in order to report the code. If the time spent results in more than one and one half times the defined value of the code, and no additional time increment code exists, round up to the next whole number."

Due to the lack of explicit guidance, DHS-OIG discovered instances where SUD providers submitted an H2035 HQ claim for alcohol and/or drug counseling per hour after more than half the time (31 minutes) of the time-based code was reached then another subsequent H2035 HQ claim for alcohol and/or drug counseling per hour within the same frequency period (per hour) as the first claim. In summary, two time-based claims for alcohol and/or drug counseling per hour were submitted within the same hour of time despite not reaching more than one- and one-half times the defined value of the code (91 minutes). Clarifying the statute will address instances of exploiting time-based codes to perform duplicate billing and provide statutory authority to stop this practice, decreasing instances of wasteful spending of taxpayer dollars.

<u>Expanding authority in licensing, payment withholds, and data sharing</u>
Under 245.095, DHS can take actions against providers or affiliated individuals when they have been excluded by DHS as well as by other state or federal agencies. However, there is no clear authority under the current data practices act that authorizes the sharing of data between agencies. Adding language to the current statute specifically authorizing the sharing of investigative and other relevant data between agencies would remove barriers to taking expedited actions to stop payments or exclude providers when appropriate under this statute. This would enhance each state agency's ability to more quickly act to protect public funds when an entity or affiliated individual has been excluded by another agency for related conduct.

Minnesota Statute, section 245A.07, subdivision 2(a)(3) requires the commissioner to immediately suspend a license if the license holder is criminally charged in state or federal court with an offense that involves fraud or theft against a program administered by the commissioner. Many licensed programs have license holders and several other controlling individuals running the programs. Currently, DHS may only immediately suspend a license if the license holder is criminally charged with theft for fraud against a DHS-administered program. Expanding the scope of this statute to include controlling individuals, in addition to license holders, would allow the commissioner to immediately suspend programs when controlling individuals are criminally charged with offenses that involve fraud or theft, in addition to just a license holder. Additionally, this proposal seeks to expand the triggering event for an immediate license suspension beyond a criminal charge for fraud or theft against a DHS-administered program, such as CCAP or MA. The proposal would expand the scope to a charge of fraud or theft against programs administered beyond just the commissioner of DHS, to mirror 245.095, to any program administered by a MN state or federal agency.

If an individual applies for a DHS license, the commissioner is required to act on the application within 90 working days after a completed application has been received. The language in statute does not explicitly allow DHS to suspend processing of the application if there is an open investigation of an applicant during the application

---

[2] https://www.revisor.mn.gov/statutes/cite/62j.536