**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| NUWAY Alliance, NUWAY House, Inc., 3 Rs NUWAY Counseling Center, NUWAY Saint Cloud Counseling Center, NUWAY University Counseling Center, NUWAY Rochester Counseling Center, 2118 NUWAY Counseling Center, NUWAY Mankato Counseling Center, NUWAY Duluth Counseling Center, <br><br>     Plaintiffs,<br> v.<br><br>Minnesota Department of Human Services Temporary Commissioner Shireen Gandhi, *in her official capacity*,<br><br>     Defendant. | Civil Action No. 25-cv-492 (JRT-ECW)<br><br>**DECLARATION OF KENNETH L. ROBERTS** |

I, Kenneth L. Roberts, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I have served as NUWAY Alliance's Chief Clinical Officer since April 23, 2013. In my role as Chief Clinical Officer, I oversee all client-facing services and licensed programs along with NUWAY's Quality Training and Compliance (QTC), Practicum, and Recovery Residence Resource Teams. I also regularly deliver educational and training content in conferences and seminars as a representative of the Alliance on a local and national level.

2. My training and experience include a pending Doctorate in Behavioral Health (DBH) and a Master's Degree in Integrated Behavioral Health (IBH). I am also

certified in Accelerated Resolution Therapy (ART) and Prolonged Exposure (PE), for the treatment of posttraumatic stress disorder (PTSD). I am also a person in long-term recovery. My twenty-year recovery period has served as the foundation for my daily passion in a fifteen-year career delivering client-focused, trauma-informed care.

**NUWAY and the RISE Program**

3.  NUWAY was established as a non-profit in 1966 as NUWAY House, Inc., offering one of the first halfway house care models in the United States and Minnesota for individuals with substance use disorder. NUWAY has since grown into one of the largest providers of co-occurring substance use disorder and mental health treatment in Minnesota.

4.  NUWAY is an enrolled substance use disorder ("SUD") services provider with Minnesota Health Care Programs ("MHCP") and delivers licensed co-occurring care under Minnesota Statute 245G (Substance Use Disorder Licensed Treatment Facilities). As such, NUWAY receives Medicaid-supported reimbursements from MHCP payors for services provided to its clients, including nonresidential (outpatient) individual and group treatment services, residential treatment services, treatment coordination, and recovery peer support.

5.  Because of the vulnerable client population it serves, NUWAY relies heavily on Medicaid-supported reimbursements to fund its operations. Approximately sixty-six percent of NUWAY's revenue is generated through its outpatient treatment program, and more than ninety percent of those revenues are from Medicaid-supported payors.

6.  Following the implementation of rate reform in 2011, which resulted in the elimination of reimbursement for halfway houses, many providers of halfway houses and

extended care addiction treatment services opted to become high-intensity residential treatment centers. This left a gap in extended care services for individuals immediately following their discharge from high-intensity residential treatment centers; many such clients were discharged to the street, only to return to use and start the cycle of use, admission, and discharge all over again.

7. Recognizing this gap in services following discharge from high-intensity residential treatment, and with the goal of disrupting the relapse cycle of substance use disorder, NUWAY created the Recovery in Supportive Environments ("RISE") program in 2014. RISE integrates high-quality, trauma-informed care with recovery residence support to those demonstrating clinical need per the American Society of Addiction Medicine's Criteria.[1] Historically, intensive outpatient therapy was provided forty hours per week over the course of five weeks. RISE was the first program in Minnesota to shift that model in support of greater extended care. RISE changed the Minnesota treatment paradigm by shortening the therapeutic day, while increasing the potential number of days those clients had access to therapy.

---

[1] ASAM is a professional medical society representing over 7,000 physicians, clinicians and associated professionals in the field of addiction medicine. ASAM is dedicated to increasing access and improving the quality of addiction treatment, educating physicians and the public, supporting research and prevention, and promoting the appropriate role of physicians in the care of patients with addiction. ASAM utilizes a six dimensional risk assessment tool that includes evaluation of an individual's withdrawal potential, biomedical status, emotional/mental health, change motivation, relapse potential, and recovery environment. *See* ASAM, Asam about Us, *available at* https://www.asam.org/about-us.

8. RISE was specifically designed to address the fact that Minnesota's Housing Support program, which I discuss in more detail below at paragraph 15, did not have the capacity or appropriate parameters to serve individuals participating in intensive outpatient programs.

9. RISE utilizes independent, community-based recovery residence resources to ensure access to stable, recovery-focused environments for clients engaged in clinical care services. All recovery residence partners are vetted by NUWAY prior to becoming a NUWAY partner. RISE aligns with the Minnesota Department of Human Services' ("DHS") goal of allowing individuals a choice about where they receive their substance use disorder care and where they live.

10. Individuals who participate in RISE must meet assessed clinical thresholds for the treatment care level per ASAM criteria. This includes identification of risk or vulnerability in the client recovery environment. Once a NUWAY treatment client has been admitted for participation in the RISE program, NUWAY pays an independent, abstinence-based recovery residence center of the client's choice to house the client during the period of the client's intensive outpatient treatment with NUWAY and for a thirty-day period following the successful conclusion of intensive outpatient treatment. RISE originally provided a stipend in the amount of $550 per month. In July of 2023, the stipend was adjusted for cost of living and is currently $700 per month.

11. A significant number of client referrals to NUWAY's intensive outpatient program come from inpatient treatment programs. In other words, as clients exit inpatient treatment programs, those programs often refer the clients to NUWAY's intensive

outpatient program as the next step in the treatment pathway. Operators of the recovery residences utilized by NUWAY's outpatient clients rarely refer clients to NUWAY.

12. As previously noted, NUWAY is now one of Minnesota's largest providers of co-occurring substance use disorder and mental health treatment. In 2024, NUWAY provided intensive outpatient treatment to over 4,800 clients and outpatient treatment to more than 540 clients. Of the intensive outpatient clients, over 80% consistently participated in the RISE program. Currently, NUWAY serves over 800 clients in intensive outpatient treatment and more than 80 patients in outpatient treatment. Of NUWAY's current intensive outpatient clients, 84% currently participate in the RISE program. NUWAY's intensive outpatient program is offered at seven locations across six counties in Minnesota, which includes recovery residences for patients in rural and unserved areas, such as Nicollet, Olmsted, Blue Earth, Stearns, Benton, Sherburne, and St. Louis counties.

13. There is a statistically significant connection between the RISE program and better outcomes for NUWAY's clients. In a study conducted between August 2019 and November 2024, the University of Minnesota determined that NUWAY intensive outpatient clients were twenty percent more likely to complete treatment if they participated in RISE.[2] The study also found that, on average, participants in recovery

---

[2] Glass, L., Wiseman, J., Anderson, L., Omar, H., Freedland, T. (2022). Recovery Residences and Improved Outcomes: The association between R.I.S.E. and clinical outcomes. Research Brief No. 5 (January, 2022) Center for Practice Transformation, University of Minnesota, *available at* https://www.nuway.org/wp-content/uploads/2022/09/Research-Brief-Recovery-Residences-and-Improved-Outcomes-The-Assoc-Between-RISE-and-Clinical-Outcomes-FINAL.pdf; regarding the ongoing nature of the study, *see* https://practicetransformation.umn.edu/research/.

5

housing spent 37 more days in treatment than those not in recovery housing.[3] One of the Managed Care Organizations ("MCOs") that coordinates and manages Medicaid-supported services for NUWAY clients, UCare, bestowed NUWAY with its Innovation Award for the RISE program, which they described as "implementing innovative supportive housing programs as part of addiction care."[4] In a press release, UCare stated that "the award recognizes a partner who is improving the health of UCare members through innovative care delivery and/or payment models. NUWAY helps individuals gain access to sustainable recovery from addiction through housing support."[5]

14. NUWAY also operates a group of smaller residential inpatient treatment programs, which currently serve over 200 clients in five locations in Minnesota.

**Available Resources**

15. Based on my training and experience, there is a shortage of treatment programs integrating recovery-focused housing in Minnesota. Two of three housing programs offered by the State of Minnesota[6]—Housing Stabilization Services and Crisis Housing—are not viable options for NUWAY's intensive outpatient clients. Housing

---

[3] *Id.*

[4] *See UCare's "A Salute to Excellence!" celebrates 23 providers*, UCare, (October 18, 2022) https://media.ucare.org/-/media/documents/media/2022/20221017_asalutetoexcellenceawards.pdf?rev=6beb5cabcb3c4f84b2e286f16175bc03&hash=4514E763DB4AF07257581CE15C50A926.

[5] *Id.*

[6] My understanding is that a fourth program—Free-Standing Room and Board—has been identified for elimination in the Governor's most recent budget proposal.

Stabilization Services assists people with disabilities (including substance use disorder) in finding and keeping housing (including paying for some moving expenses), but does not pay for housing,[7] and clients in outpatient treatment do not qualify for Crisis Housing (which serves people receiving inpatient or residential substance use disorder).[8] NUWAY's intensive outpatient clients are eligible for Minnesota's third housing program, called Housing Support, which pays for room and board for adults with disabilities in highly-regulated facilities.[9]

16. Before NUWAY developed RISE, I frequently observed a lack of capacity in Housing Support programs to meet the needs of clients discharging from inpatient residential treatment, resulting in these clients being unable maintain consistent engagement with outpatient services. Furthermore, many Housing Support settings are not run with a recovery focus, making them non-supportive or unhealthy environments for individuals in early recovery. Although the state does not provide accessible data on total bed counts, based on my training and observations, those capacity levels remain proportionately the same today, and Minnesota's Housing Support program likely does not

---

[7] *See* MN Department of Human Services Housing Stabilization Services, https://mn.gov/dhs/partners-and-providers/policies-procedures/housing-and-homelessness/housing-stabilization-services/housing-stabilization-services.jsp (last visited Feb. 6, 2025).

[8] *See* MN Department of Human Services, Housing programs and services, https://mn.gov/dhs/people-we-serve/adults/economic-assistance/housing/programs-and-services/ (last visited Feb. 6, 2025).

[9] *See* MN Department of Human Services, Housing Support (formerly known as Group Residential Housing), https://mn.gov/dhs/people-we-serve/seniors/economic-assistance/housing/programs-and-services/housing-support.jsp (last visited Feb. 6, 2025).

7

have the capacity to house NUWAY's intensive outpatient client population currently utilizing recovery residence support. Additionally, because the majority of Minnesota's Housing Support providers are not abstinence based (meaning participants in the Housing Support program are not required to abstain from drugs and alcohol), in my professional opinion, such housing is often not suitable for individuals engaged in intensive outpatient treatment because it lacks the supportive peer environment demonstrated to support a recovery process and may expose vulnerable individuals to direct relapse triggers.

17. On February 4, 2025, I participated in a call with representatives of DHS. The purpose of the call, according to DHS, was to discuss next steps to ensure client continuity of care if NUWAY were to cease operations following the payment suspension that is scheduled to take effect on February 21, 2025.

18. While discussing the transfer of NUWAY intensive *outpatient* clients away from NUWAY's residential recovery partners, Paula Halverson, Manager of DHS's Licensing Division and Unit Manager of the Mental Health/Substance Use Disorder/CRF Unit, inquired whether NUWAY had capacity in its residential *inpatient* treatment programs such that NUWAY's intensive *outpatient* clients could be transferred to that higher level of care for treatment and housing based only on the need for housing. I informed Ms. Halverson that NUWAY's residential programs are currently at capacity. Ms. Halverson's question suggested to me that there is, indeed, a shortage of treatment and recovery-focused housing in Minnesota if DHS would be willing to take the drastic and arguably improper step of returning outpatient clients—who have recently completed

inpatient residential treatment (and are therefore no longer clinically indicated for that level of care)— to inpatient residential treatment at a higher cost to the State.

19. Additionally, I know that approximately two dozen other substance use disorder treatment providers in Minnesota provide housing assistance, similar to the RISE program, to clients in intensive outpatient programs. Because I believe in the effectiveness and benefits of RISE for such clients, I asked the DHS representatives during the February 4th call whether DHS would consider it improper for NUWAY to facilitate the transfer of patients to treatment providers with identically or similarly structured programs—like RISE—following a payment suspension. DHS initially responded that it would not provide information about whether there were any existing investigations related to the practices or programs of other providers. Upon further inquiry, DHS confirmed that NUWAY would not be expected to determine whether any entities were engaging in the same alleged fraudulent conduct that DHS alleges NUWAY has been engaging in via the RISE program. Therefore, according to DHS, NUWAY would be permitted to transition intensive outpatient clients to entities operating housing assistance programs like the RISE program so long as there were no pending DHS actions against those entities.

20. On February 5, 2025, DHS emailed NUWAY a handout to provide to clients summarizing "Housing, treatment help for clients affected by service disruptions." A true and correct copy of the handout provided to NUWAY by DHS is attached hereto as **<u>Exhibit A</u>**. Based on the handout, DHS's suggestion to NUWAY's intensive outpatient clients is to utilize Minnesota's Housing Support program discussed in paragraphs 14 and 15 of this Declaration. Additionally, the handout had links to lists of providers that operate housing

assistance programs like the RISE program, as discussed in paragraph 18 of this Declaration.

**Impact of Payment Withhold**

21. I understand that if NUWAY's operations ceased, many NUWAY clients in the intensive outpatient program would suffer from two potential changes: interruption of the continuity of treatment and loss of housing. While difficult to quantify, a simultaneous interruption of care and the recovery environment could have life-threatening consequences for impacted clients.

22. Continuity of care is identified as foundational component of evidence-based substance use disorder treatment by the American Society of Addiction Medicine ("ASAM"). Studies have consistently shown that the longer care touchpoints are sustained along a continuum, the more consistently sustained recovery outcomes are achieved.

23. Per longitudinal data gathered in a five-year study through the University of Minnesota, fifty percent of clients entering NUWAY's intensive outpatient program reported homelessness in the six months preceding entry to the program and averaged five prior treatment episodes for substance use disorder. Inclusion of recovery housing as an integrated component of treatment has been demonstrated to result in better outcomes for clients receiving that support, including increased days of abstinence, reduced mental health disorder symptoms, and increased rates of successful treatment completion. The most recent ASAM guidance formally published in 2024 includes recovery residence housing as a formal part of the treatment continuum.

24. Based on my training and experience, some of the likely impacts on current NUWAY clients in the intensive outpatient program if their continuity of care was interrupted by cessation of NUWAY's operations *and/or* if they lose their housing in recovery residences and are unable to secure alternative housing include separation from trusted counselors and interruption of individualized clinical care, destabilization of their existing recovery environment, disruption of established peer relationship supports and manifestation of emotional, environmental, and psychological stressors precipitating potential return to substance use and a range of potential negative outcomes, including overdose and death.

25. In addition to the harm to NUWAY clients, any cessation of NUWAY's operations will impact NUWAY and its partners in immeasurable ways. Recovery residence providers who house NUWAY's vulnerable clients will be faced with an immediate negative impact to their sustainability and the potential prospect of having to close their doors permanently. Recovery residences are owned and run by small business owners, usually individuals with lived substance use disorder recovery history seeking to give back to those in need. Their margins are minimal, and they do not have the reserves to offset the sweeping loss of bed occupancy that would occur.

26. DHS's payment withhold will not only cause NUWAY to cease outpatient operations now but will destroy the trust patients and partners have placed in NUWAY, significantly harming its reputation and future operations in the event it is able to ever re-open.

27. Inability to sustain the intensive outpatient program will result in the loss of career, livelihood, and benefits for over two hundred highly trained NUWAY clinicians and their families. Additionally, over forty NUWAY practicum students (interns) will be displaced. This will result in the loss of credits during the current semester, delaying the students' ability to obtain licensure required for employment.

28. With the deadline only two weeks away, NUWAY has already started to experience the impact of the looming payment withholds. Some of these impacts include: (1) a decrease in client consistency of treatment engagement, (2) a cessation of external employment applicants to fill critical client-facing service roles, (3) a significant decrease in existing staff morale, (4) notifications from trusted community partners of their intent to cease referrals to NUWAY's programs; and (5) preemptive reimbursement stoppages from state contracted payers. Additionally, our financial auditor, Baker Tilley, has put a work stoppage in place; consequently, Baker Tilley's 2023 audit, due February 7, 2025, will not be completed. This audit is required by our banking partners, who have requested it as recently as February 5, 2025.

29. If a payment withhold went into effect on February 21, 2025, NUWAY would make every effort to responsibly transfer its clients to comparable, available treatment and housing. Without incoming revenue, however, I have learned it is reasonable to estimate that NUWAY would be forced to cease admissions of new intensive outpatient clients immediately. Per licensure requirements, NUWAY would be required to provide twenty-five days of notice and treatment to *current* intensive outpatient clients, and without revenue, would be forced to cease intensive outpatient services entirely within sixty days.

February 7, 2025                  */s/ Kenneth L. Roberts*
                                  Kenneth L. Roberts