| | |
|---|---|
| NUWAY Alliance, NUWAY House, Inc., 3 Rs NUWAY Counseling Center, NUWAY Saint Cloud Counseling Center, NUWAY University Counseling Center, NUWAY Rochester Counseling Center, 2118 NUWAY Counseling Center, NUWAY Mankato Counseling Center, NUWAY Duluth Counseling Center | Case No. 25-cv-492 (JRT/ECW) |
| Plaintiff, | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| Minnesota Department of Human Services Temporary Commissioner Shireen Gandhi, *in her official capacity*, | |
| Defendant. | |

# TABLE OF CONTENTS

I.    NUWAY IS LIKELY TO SUCCEED ON THE MERITS OF ITS
      PROCEDURAL DUE PROCESS CLAIM.............................................................2

      A.    DHS Ignores NUWAY's Protected Interest..................................................2

            1.    DHS's incomplete analysis of NUWAY's right to a hearing
                  fails to rebut that NUWAY has a protected interest. .........................3

            2.    DHS fails to address other statutory protections, which also
                  give NUWAY a protected interest. .....................................................7

            3.    DHS has failed to demonstrate why NUWAY does not have a
                  protected interest in its claims under the Medicaid Act.....................9

      B.    DHS's Procedures Fall Short of the Constitutional Bare Minimum...........10

            1.    DHS failed to show that it provided NUWAY notice or a
                  meaningful opportunity to be heard. ................................................11

            2.    DHS misapplies the *Mathews* Factors...............................................13

II.   NUWAY AND ITS PATIENTS WILL SUFFER IRREPARABLE HARM
      WITHOUT AN INJUNCTION. ..............................................................................14

      A.    DHS Cannot Deny NUWAY's Clients Will Suffer Irreparable Harm. ......14

      B.    NUWAY's Outpatient Treatment Program Faces an Existential
            Threat From DHS's Payment Freeze. ..........................................................15

      C.    NUWAY's Decision to Provide Services to Vulnerable, Low-
            Income Minnesotans Does Not Constitute "Unclean Hands.".....................16

III.  THE BALANCE OF HARMS AND THE PUBLIC'S INTEREST
      SUPPORT GRANTING AN INJUNCTION. ..........................................................16

      A.    Losing Its Ability to Punish NUWAY for Failing to Settle with DOJ
            Is Not a Legitimate Harm..............................................................................17

      B.    The Injunction Protects the Public Fisc........................................................17

      C.    The Harms of Not Granting the Injunction Heavily Outweigh DHS's
            Claimed Harms...............................................................................................18

**Cases**

*Abba Pharmacy Inc. v. Perales*,
No. 87-CV-266 (MGC), 1987 WL 13277 (S.D.N.Y. June 29, 1987) ........................ 14

*Alexandre v. Ill. Dep't of Healthcare & Fam. Servs.*,
No. 20-CV-6745, 2021 WL 4206792 (N.D. Ill. Sept. 15, 2021) .................................. 14

*Am. Registry of Radiologic Technologists v. Bennett*,
655 F. Supp. 2d 944 (D. Minn. 2009) ........................................................................... 5

*Anderson v. Sullivan*,
959 F.2d 690 (8th Cir. 1992) ........................................................................................ 6

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) .................................................................................................. 6, 7

*Bowens v. N.C. Dept. of Hum. Res.*,
710 F.2d 1015 (4th Cir. 1983) ..................................................................................... 7

*Cent. Care Ctr. v. Wynia*,
448 N.W.2d 880 (Minn. App. 1989) ........................................................................... 11

*Clarinda Home Health v. Shalala*,
100 F.3d 526 (8th Cir. 1996) ........................................................................................ 6

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .................................................................................................... 11

*CT Ohio Portsmouth, LLC v. Ohio Dept. of Medicaid*,
161 N.E.3d 803 (Ohio Ct. App., 2020) ........................................................................ 8

*Dukes v. Wal-Mart Stores, Inc.*,
No. 01-CV-2252, 2013 WL 1282892 (N.D. Cal. Mar. 26, 2013) ............................... 12

*Erickson v. U.S. ex rel. Dept. of Health and Human Servs.*,
67 F.3d 858 (9th Cir. 1995) .......................................................................................... 6

*Fam. Rehab., Inc. v. Azar*,
No. 3:17-CV-3008-K, 2020 WL 230615 (N.D. Tex. Jan. 15, 2020) ........................... 10

# TABLE OF AUTHORITIES

Page

*Gibson v. Berryhill*,
411 U.S. 564 (1973) ................................................................. 11

*In re Grand Jury Procs. Involving Berkeley & Co.*,
466 F. Supp. 863 (D. Minn. 1979) ............................................ 12

*Hathaway v. Mathews*,
546 F.2d 227 (7th Cir. 1976) ......................................... 9, 13, 14

*Personal Care Prods., Inc. v. Hawkins*,
635 F.3d 155 (5th Cir. 2011) ...................................................... 6

*Ram v. Heckler*,
792 F.2d 444 (4th Cir. 1986) ...................................................... 9

*Shire v. Harpstead*,
No. A19-0807, 2019 WL 7287088 (Minn. App. Dec. 30, 2019) .................................. 6

*Sierra Med. Servs. All. v. Kent*,
883 F.3d 1216 (9th Cir. 2018) ..................................................... 6

*Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins.*,
79 F.Supp.3d 753 (M.D. Tenn., 2015) ........................................ 8

**Statutes**

Minn. Stat. § 256B.064, subd. 1b ................................................ 3, 7

Minn. Stat. § 256B.064, subd. 2 ............................................... *passim*

Minn. Stat. § 645.17 ...................................................................... 6

**Federal Regulations**

42 C.F.R. § 405.371 ...................................................................... 6

42 CFR § 455.2 .............................................................................. 9

42 CFR § 455.23 ...................................................................... 4, 7, 8

## INTRODUCTION

DHS's Opposition makes clear that it is seeking to withhold payments from NUWAY—which would shut down NUWAY's award-winning outpatient treatment programs—based on allegations from the U.S. Attorney's Office that DHS was directed to keep secret. DHS is wrongly leveraging Minnesota's payment withhold statute to pressure NUWAY into resolving the DOJ's False Claims Act investigation—with no opportunity for NUWAY to ever present evidence and defend itself against allegations of fraud to a neutral arbiter. DHS's argument that "this is not the forum" for NUWAY to defend itself against allegations of fraud is particularly troubling when: (1) DHS is attempting to execute a scheme to prevent any merits hearing or trial from ever happening, and (2) NUWAY must rebut the allegations to address a key component of the payment withhold—the "credible allegations of fraud."

Unfortunately for DHS, it has, for years, misread Minnesota's law regarding payment withholds and subjected healthcare providers like NUWAY to an unconstitutional deprivation of an administrative hearing. Revealingly, DHS's opposition does not even attempt to address Minn. Stat. § 256B.064, subd. 2(f), which grants providers the right to an administrative hearing—and, therefore, an interest in withheld payments protected by the Due Process Clause.

In addition, DHS fails to meaningfully address the other procedural safeguards contained in Minnesota statute. By limiting the circumstances and the means through which DHS can impose a payment withhold, Minnesota statute provides NUWAY an interest in withheld payments protected by the Due Process Clause. For example, DHS

still has not provided any reliable information that the good cause exceptions to the payment withhold do not apply—nor that DHS undertook any such analysis.

As to irreparable harm, DHS bizarrely questions why NUWAY's intensive outpatient treatment program will cease to exist if it loses more than ninety percent of its revenue and provides baseless information about the capacity for other providers to treat NUWAY's outpatient clients if the payment withholds go into effect. Crucially, DHS fails to provide any rejoinder to the fact that Minnesota cannot provide safe and appropriate housing to NUWAY's outpatient clients without NUWAY's subsidy.

For all these reasons, the balance of harms weighs in favor of the relief requested by NUWAY, and NUWAY's motion for a temporary restraining order and preliminary injunction should be granted.

## ARGUMENT

### I. NUWAY IS LIKELY TO SUCCEED ON THE MERITS OF ITS PROCEDURAL DUE PROCESS CLAIM.

DHS's opposition fails to rebut NUWAY's showing that it has a fair chance of prevailing on its Fourteenth Amendment claim.[1]

#### A. DHS Ignores NUWAY's Protected Interest.

DHS does not meaningfully address NUWAY's primary argument supporting its protected interest: Minnesota statute (and reinforcing federal law) give it one. Tellingly,

---

[1] NUWAY does not address the arguments in DHS's Opposition about NUWAY's two additional causes of action. (*See* Opp. 30-32.) NUWAY did not brief the merits of these claims in its motion, and the Court need not reach them. NUWAY disagrees with DHS's arguments about the viability of these claims and reserves all rights.

DHS provides no argument regarding—and in fact, does not even mention—the provision of Minnesota law that requires DHS to provide a hearing. DHS also ignores the other procedural requirements Minnesota statute mandates before DHS can suspend payments. These provisions give NUWAY a protected interest.

DHS focuses almost all of its energy on whether the Medicaid Act, standing on its own, gives NUWAY a protected interest in the claims it submits to DHS. That question is unsettled in the Eighth Circuit. If the Court reaches that question, it should conclude that NUWAY has a protected interest. NUWAY addresses each of these (non-exclusive) sources of its protected interest in turn.

> **1.** **DHS's incomplete analysis of NUWAY's right to a hearing fails to rebut that NUWAY has a protected interest.**

DHS does not dispute that, if NUWAY has a statutory right to a hearing when DHS withholds payment of NUWAY's claims, then NUWAY has a protected interest in its claims. NUWAY has the right to a hearing.

In its opposition, DHS analyzes *some* of the provisions in Minnesota statute section 256B.064. (*See* Opp. 6-8.) DHS does not dispute that the statute categorizes payment suspension as a sanction. *See* Minn. Stat. § 256B.064, subd. 1b. And DHS does not dispute that subdivision 2 governs the procedures DHS must follow when imposing sanctions.

DHS also accurately describes for the Court a *portion* of subdivision 2, but stops short of addressing the provision that entitles NUWAY to a hearing. DHS acknowledges that it generally may not impose a sanction on a provider "without prior notice and an opportunity for a hearing." (*See* Opp. 8, 26 (citing Minn. Stat. § 256B.064, subd. 2(a)).)

DHS also acknowledges one of the exceptions to that requirement: if DHS believes it is "necessary to protect the public welfare and the interests of the program," it may impose the sanction of payment suspension "after notice and prior to the hearing." (*See* Opp. 8, 26 (citing Minn. Stat. § 256B.064, subd. 2(a)).) DHS fails to meaningfully address the second exception, which provides that, if there is a "credible allegation of fraud," DHS may impose the sanction of payment suspension "without providing advance notice"—in other words, before both the required hearing and notice. Minn. Stat. § 256B.064, subd. 2(b). Significantly, DHS entirely ignores subdivision 2(f), which gives providers the right to commence a hearing (a "contested case" under Minnesota law) after they receive notice:

> (f) Upon receipt of a notice under paragraph (a) that a monetary recovery or sanction is to be imposed, *an individual or entity may request a contested case*, as defined in section 14.02, subdivision 3, by filing with the commissioner a written request of appeal. . . .

*Id.*, subd. 2(f) (emphasis added).[2]

The basis for DHS's position that the Minnesota statute does not give providers the right to a hearing is not clear. (Opp. 7-8, 26.) It appears that DHS is overreading the following language in Minn. Stat. § 256B.064, subd. 2(a): "Except as provided in paragraphs (b) and (d) . . . ." (*Id.* 8, 26.) DHS seems to suggest that because paragraph (b), on which it relies for its payment withhold, does not explicitly address a hearing, providers

---

[2]     Federal law reinforces Minnesota law. It mandates that a "provider may request, and *must be granted*, administrative review where State law so requires." 42 C.F.R. § 455.23(a)(2), (3) (emphasis added). In addition, if state law provides for administrative review, federal law requires the state notify providers of their rights to that administrative review when providing notice of the payment suspension. *Id.* 455.23(b)(2).

lose the right to a hearing in such circumstances. That interpretation is not supported by the plain language of the statute or common sense.

The statute requires DHS to provide prior notice and an opportunity for a hearing "[e]xcept as provided in" paragraph (b). Minn. Stat. § 256B.064, subd. 2(a). But paragraph (b) does not "provide" anything about a hearing. It merely addresses the *timing* of the notice, authorizing DHS to withhold payments "without providing advance notice." *Id.*, subd. 2(b). Paragraph 2(b)'s silence about a hearing cannot be interpreted to destroy a provider's right to a hearing altogether. Later paragraphs of subdivision 2 confirm this.

As noted *supra,* subdivision 2(f) makes clear that providers have the right to a hearing for all sanctions, including payment withholds. NUWAY made this argument in its opening brief. DHS chose to ignore it, waiving any argument in opposition. *See, e.g.*, *Am. Registry of Radiologic Technologists v. Bennett*, 655 F. Supp. 2d 944, 946 n.2 (D. Minn. 2009) ("It is well established that a party concedes an issue by failing to address it in an opposing brief.").

In addition, subdivision 2(e) shows that, when the Minnesota Legislature intends to deprive providers of a hearing, it will say so explicitly:

> (e) The commissioner shall suspend or terminate an individual's or entity's participation in the program *without providing advance notice and an opportunity for a hearing* when the suspension or termination is required because of the individual's or entity's exclusion from participation in Medicare.

*Id.*, subd. 2(e) (emphasis added). It cannot be that "without providing advance notice" in subdivision 2(b) and "without providing advance notice and an opportunity for a hearing"

in subdivision 2(e) mean the same thing. *See* Minn. Stat. § 645.17 (instructing courts to be "guided by" the presumption that the Minnesota legislature "intends the entire statute to be effective" and "does not intend a result that is absurd . . . or unreasonable").

DHS's Opposition cites several cases. These cases do not, however, involve the interpretation of Minn. Stat. § 256B.064.[3] That statute—in conjunction with reinforcing federal law—is what "create[s] and define[s]" the dimensions of NUWAY's protected interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577-78 (1972). Moreover, in many of DHS's cited cases, the provider could have received, or did receive, a hearing.[4]

DHS cites *Clarinda Home Health v. Shalala*, 100 F.3d 526 (8th Cir. 1996) for the proposition that a provider "has no due process right to a hearing during an investigation for fraud and misrepresentation." (Opp. 27.) But *Clarinda* did not interpret the Minnesota statue at issue in this case. Instead, *Clarinda* made the unremarkable statement that the Medicare regulation found in 42 C.F.R. § 405.371 does not mandate a hearing. *Clarinda*, 100 F.3d at 529. *Clarinda* is not helpful in deciding whether Minnesota statute gives NUWAY a protected interest.

---

[3] In *Shire v. Harpstead*, No. A19-0807, 2019 WL 7287088 (Minn. App. Dec. 30, 2019), the Minnesota Court of Appeals interpreted Minn. Stat. § 256B.064. However, the provider did not argue (and the court did not consider) whether the statute provided the right to a hearing or whether DHS had otherwise failed to comply with the majority of the statutory requirements identified by NUWAY.

[4] *See Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992); *Erickson v. U.S. ex rel. Dept. of Health and Human Servs.*, 67 F.3d 858, 860 (9th Cir. 1995); *Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1221 (9th Cir. 2018); *Personal Care Prods., Inc. v. Hawkins*, 635 F.3d 155, 158-59 (5th Cir. 2011).

By requiring DHS to provide NUWAY with a hearing (and to notify NUWAY of its administrative appeal rights), Minnesota statute and reinforcing federal law provide NUWAY a protected interest in payment of its claims.

### 2. DHS fails to address other statutory protections, which also give NUWAY a protected interest.

DHS fails to address whether the other procedural protections in Minnesota statute and federal law that give NUWAY a protected interest. Minnesota statute and federal law allow DHS to suspend NUWAY's payments only if the following requirements are met (in addition to the hearing and notification discussed above):

- DHS must find there is no "good cause" to avoid suspension. 42 CFR § 455.23(e); Minn. Stat. § 256B.064, subd. 2(b).

- DHS "shall consider the nature, chronicity, or severity of the conduct and the effect of the conduct on the health and safety of persons served by" NUWAY. Minn. Stat. § 256B.064, subd. 1b.

- DHS is only authorized to withhold NUWAY's payments on a "temporary" basis. 42 CFR § 455.23(c)(1); Minn. Stat. § 256B.064, subd. 2(c)(3).

- DHS can suspend payments only if it determines "there is a credible allegation of fraud for which an investigation is pending under the Medicaid program." 42 CFR § 455.23(a)(1); Minn. Stat. § 256B.064, subd. 2(b)(2).

DHS fails to explain why these "statutory terms" do not "create[] and define[]" a protected interest for NUWAY, which has "a legitimate claim of entitlement to" payment for its claims unless these statutory requirements for deprivation are met. *Roth*, 408 U.S. at 577-78; *see also, e.g.*, *See, e.g.*, *Bowens v. N.C. Dept. of Hum. Res.*, 710 F.2d 1015, 1018 (4th Cir. 1983) (plaintiff had a property right to continued participation in the Medicaid program because North Carolina law "expressly limit[ed] the reasons for and means by

which a provider may be terminated"); *CT Ohio Portsmouth, LLC v. Ohio Dept. of Medicaid*, 161 N.E.3d 803, 820 (Ohio Ct. App., 2020) ("Ohio law create[d] a constitutionally protected property interest" because "participation in Ohio's Medicaid program is not terminable at the will of the state, but only where specified conditions are met"); *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.*, 79 F.Supp.3d 753, 770 (M.D. Tenn., 2015) (plaintiffs had identified a protected property interest when the applicable state law "require[ed] notice and an opportunity to be heard prior to loss of participation").

Nor does DHS attempt to show that it complied with these statutory requirements. DHS does not submit sworn evidence that DHS considered and rejected the good cause factors in 42 CFR § 455.23(e). DHS also does not address the "nature, chronicity, or severity" analysis.

Similarly, DHS does not submit any evidence or argument to show that the payment withhold is "temporary." To the contrary, DHS acknowledges that it has been aware of the DOJ investigation—the source of the alleged "credible allegations of fraud"—for more than a year and that the DOJ investigation began almost two years before that. (*See* Opp. 8-9.) Yet DHS does not even hint at a time frame during which it may reach a conclusion regarding the sufficiency of the evidence or when legal proceedings may conclude.[5]

---

[5]     As the Court is likely aware, False Claims Act litigation often lasts for years after a complaint is filed. The idea that a payment withhold during the pendency of False Claims Act case is "temporary" stretches the definition of the word "temporary" to make it meaningless.

Finally, DHS does not substantiate any credible allegation of fraud. Indeed, DHS *still* will not confirm what NUWAY conduct is at issue and, instead, requests permission to submit information to the court *in camera*.[6]

### 3. DHS has failed to demonstrate why NUWAY does not have a protected interest in its claims under the Medicaid Act.

DHS argues that NUWAY does not have a protected interest in its claims under the Medicaid Act and cites cases from other jurisdictions where courts concluded that the plaintiff did not have a protected interest in continued participation in the Medicaid program. (*See* Opp. 22-25.) The issue is unsettled in the Eighth Circuit. While the Court need not reach this issue—and can stop after concluding that Minnesota statute gives NUWAY a protected interest—it can also choose to follow the persuasive authority from other courts that have concluded the Medicare and Medicaid Act *does* give providers a protected interest in payment for services they render to qualifying beneficiaries. *See, e.g.*, *Ram v. Heckler*, 792 F.2d 444, 447 (4th Cir. 1986) ("[Plaintiff's] expectation of continued participation in the Medicare program is a property interest protected by the due process clause of the fifth amendment."); *Hathaway v. Mathews*, 546 F.2d 227, 230 (7th Cir. 1976) ("Title XIX of the Social Security Act created expectations on the part of both consumers and providers of health care. While Congress need not have enacted Title XIX in the first place, once it did so the federal government cannot terminate Medicaid payments without

---

[6] To the extent DHS's "credible allegation of fraud" is NUWAY's housing program, DHS conspicuously fails to address how NUWAY has committed an "intentional deception or misrepresentation," 42 CFR § 455.2, in light of the evidence that NUWAY made DHS aware of the program years ago.

providing notice of the reasons for termination to the person who is to be deprived of the

statutory entitlement and a hearing before an impartial factfinder in which that person can

attempt to rebut the charges against him.")

As one district court persuasively explained:

> Under [defendant's] view of Medicare, a provider is supposed
> to dutifully administer services with the mere hope that the
> Medicare system would show it mercy when deciding what
> amount to reimburse. A provider would be expected to plug
> along knowing that, if Medicare chose not to reimburse, it
> would not have any property interest upon which to claim. That
> position is so ludicrous as to be specious. If there were no
> recognized property interest, providers would be expected to
> treat every Medicare patient as a charity case where
> reimbursement would just be a nice bonus. Those who
> predominately administer services to Medicare patients would
> not have any reasonable expectation of payment and could not
> function as a business. Because the Medicare providers would
> not provide service to Medicare patients without the reasonable
> expectation of payment, the Medicare statute constitutes an
> 'independent source' that 'support[s] claims of entitlement'
> filed by Medicare providers.

*Fam. Rehab., Inc. v. Azar*, No. 3:17-CV-3008-K, 2020 WL 230615, at *5 (N.D. Tex. Jan.

15, 2020), rev'd 16 F.4th 1202 (5th Cir. 2021).

**B.     DHS's Procedures Fall Short of the Constitutional Bare Minimum.**

The second element of a procedural due process claim analyzes whether the

procedures followed by the government were constitutionally insufficient.  *See Swarthout*,

562 U.S. at 219.  DHS has failed to rebut NUWAY's showing that it is likely to succeed

on this element of its claim.

**1.    DHS failed to show that it provided NUWAY notice or a meaningful opportunity to be heard.**

Typically, the Fourteenth Amendment requires prior notice and a meaningful opportunity to be heard.  *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  DHS has refused to provide NUWAY with either.[7]

In its Opposition, DHS argues that it issued notices and informed NUWAY "of its ability to submit written evidence explaining why payments should not be withheld." (Opp. 29.)  But the notices fail to provide any meaningful information.  They provide only vague statements that could be made for *any* payment suspension.  The opportunity to respond in writing is insufficient if the responding party has not received adequate notice of the underlying allegations.

DHS's Opposition represents more of the same.  DHS repeatedly invokes purported "obligations" that limit "disclosure of specific information during ongoing investigations" to justify its refusal to provide NUWAY notice of the allegations against it.  (*E.g.* Opp. 29.) But the provision of Minnesota law that DHS invokes—Minn. Stat. § 256B.064, subd. 2 (c)(2)—is presumably meant to protect against spoliation of evidence or other obstruction

---

[7]    DHS argues that NUWAY did not demand a contested case hearing.  (Opp. 26.)  But NUWAY had no obligation to demand a contested case hearing because DHS's payment withhold notices did not notify NUWAY of its right to do so—in violation of federal law— and a request for a contested case proceeding would have been futile, given DHS's position that NUWAY is not entitled to one.  *See, e.g.*, *Cent. Care Ctr. v. Wynia*, 448 N.W.2d 880 (Minn. App. 1989) (excusing providers from failing to file an administrative appeal because DHS did not provide adequate notice of appeal rights); *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973) (explaining that an aggrieved party need not exhaust administrative remedies if doing so would be futile because the state agency has "predetermined the issue").

that may result from providing the subject of an investigation with detailed information about the methods and sources of an investigation. DHS fails to explain why it cannot identify what *alleged conduct* NUWAY engaged in from its own investigation of the "credible allegations of fraud"—as it is statutorily and constitutionally required to do—without implicating these concerns.

Indeed, DHS spends more than two pages of its brief discussing allegations made against NUWAY in the DOJ's investigation and, recently, in media reports.[8] (Opp. 9-11.) Since these public allegations apparently are relevant—otherwise DHS surely would not have mentioned them to the Court—it is unclear what has prevented DHS from informing NUWAY that these are the credible allegations of fraud at issue (if true), other than the directive from DOJ to withhold the information from NUWAY. NUWAY has known about the issues in the DOJ investigation for nearly three years and had been consistently cooperating with the DOJ. (*See* Dkt. 8 ¶¶ 2-3.) There is no legitimate reason that DHS cannot confirm or deny if the "credible allegations of fraud" are the allegations at issue in that investigation. If, however, DHS's "credible allegations of fraud" are something

---

[8] DHS's opposition repeatedly references purported legal advice that NUWAY received, citing a media report as its source. (*See* Opp. 10-11, 40.) DHS knew, or should have known, that the disclosure of NUWAY's privileged information in the media report was unauthorized. NUWAY objects to the Court's consideration of attorney-client privileged material in deciding this motion. *See, e.g.*, Fed. R. Evid. 502; *In re Grand Jury Procs. Involving Berkeley & Co.*, 466 F. Supp. 863, 869 (D. Minn. 1979) (attorney-client privilege is not lost when a former employee steals privileged documents and discloses them); *Dukes v. Wal-Mart Stores, Inc.*, No. 01-CV-2252, 2013 WL 1282892, at *5 (N.D. Cal. Mar. 26, 2013) (unauthorized disclosure of privileged documents to a newspaper did not waive privilege).

different, DHS has provided NUWAY absolutely no notice of those allegations or any opportunity to defend itself.

### 2. DHS misapplies the *Mathews* Factors.

*Mathews v. Eldridge* provides three factors for courts to apply in assessing the adequacy of procedural due process protections: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 332, 334 (1976). DHS argues that "[e]ven if Nuway could identify a protected liberty or property interest, it cannot demonstrate likelihood of success" under these factors. (Opp. 28.) But DHS's own arguments betray this assertion. Instead of defending DHS's procedural protections on their merits, DHS announces itself the winner of each *Matthews* factor based on NUWAY's purported lack of a protected interest. (*Id.*)

When properly applied, the *Mathews* factors uniformly favor NUWAY. First, the private interests at issue are critical. DHS's unlawful payment suspension threatens the very existence of NUWAY's largest programs—outpatient treatment—and imposes grave risks on the individuals under NUWAY's care.

Second, the risk of an erroneous deprivation is significant. As detailed above, DHS's insufficient procedures effectively deprive the subject of an investigation of any ability to defend itself. Meanwhile, the probable value of additional safeguards—here, simply the notice and hearing required by law—is substantial. Numerous courts have

recognized the value of a hearing prior to a deprivation of funding. *See, e.g.*, *Abba Pharmacy Inc. v. Perales*, No. 87-CV-266 (MGC), 1987 WL 13277, at *4 (S.D.N.Y. June 29, 1987); *Alexandre v. Ill. Dep't of Healthcare & Fam. Servs.*, No. 20-CV-6745, 2021 WL 4206792, at *7 (N.D. Ill. Sept. 15, 2021).

Finally, DHS did not identify any administrative burden that would be imposed by adhering to the proper legal standards here. The procedures for contested case hearings under Minnesota's Administrative Procedure Act are well established. *See* Minn. Stat. § 256B.064, subd. 2(a), (f). Accordingly, the *Mathews* factors strongly support NUWAY's position that DHS has deprived it of due process under the law.

## II. NUWAY AND ITS PATIENTS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION.

DHS does not meaningfully contest that NUWAY's patients will suffer irreparable harm absent an injunction. Instead, DHS claims that NUWAY's expectation that it will be unable to financially sustain its operations and be forced to cease providing outpatient services within sixty days after a payment withhold goes into effect is nothing more than "ordinary economic loss." (*See* Opp. 33-35.) DHS even suggests that NUWAY's not-for-profit, mission-driven services provided to the most vulnerable Minnesotans renders its hands "unclean." None of these arguments has merit.

### A. DHS Cannot Deny NUWAY's Clients Will Suffer Irreparable Harm.

DHS asserts (without support) that existing providers will be able to absorb NUWAY's clients. (Opp. 38; Dkt. 24 ¶¶ 3-4) DHS's representation is pure speculation—and likely inaccurate. Calls placed to a handful of Blue Earth and Stearns County providers

demonstrate that it is highly unlikely that the providers in those counties will be able to absorb NUWAY's clients, even assuming that DHS estimates of the number of NUWAY's clients are too large. (Bourgeois Decl. ¶¶ 3-4.) Contact with three providers in Blue Earth County and four providers in Stearns County revealed that some providers have no availability in the next month or are not currently offering intensive outpatient treatment. (Bourgeois Decl. ¶¶ 3-4.) At the time of the filing of the Opposition, there is no evidence that DHS took steps to assess actual availability.

Further, DHS made no effort to rebut NUWAY's evidence that a transition of care is likely to result in a dramatic upheaval to its clients' lives. (Dkt 10 ¶¶ 13-14.) And because NUWAY's clients depend on NUWAY to pay housing stipends, the loss of NUWAY's ability to do so will result in the loss of housing for those clients. (*Id.*; Roberts Suppl. Decl. ¶¶ 6-7.) DHS makes no arguments, nor does it submit any evidence, that NUWAY's clients will be able to maintain safe and abstinence-based housing without the RISE program.

### B. NUWAY's Outpatient Treatment Program Faces an Existential Threat From DHS's Payment Freeze.

DHS concedes that economic loss constitutes irreparable harm when it "threatens the very existence" of the organization. (*See* Opp. 33.) That is exactly what is at issue here. If NUWAY cannot be paid for the services it provides to Medicaid beneficiaries— which constitute more than ninety percent of the outpatient treatment program's revenue— it cannot operate. (*See* Dkt. 9 ¶¶ 25-29.) DHS's anticipated payment freeze will force NUWAY to "cease admissions of new intensive outpatient clients immediately" and,

without revenue, "cease intensive outpatient services entirely within sixty days." (Dkt. 9 ¶ 29; *see* Dkt. 12, 9-10.) NUWAY will lose its other referral sources, reimbursement from other state contracted payers, and staff. (*See* Dkt. 9 ¶¶ 27-28.) NUWAY's evidence demonstrates the loss of its entire outpatient treatment operation.

### C. NUWAY's Decision to Provide Services to Vulnerable, Low-Income Minnesotans Does Not Constitute "Unclean Hands."

DHS's argument that NUWAY has unclean hands is unsupported by the facts, the law, or common decency. DHS asserts that, because NUWAY decided to dedicate its mission-driven not-for-profit operations to serving Medicaid beneficiaries with life-threatening substance use disorders, it has "unclean hands." (*See* Opp. 38-40.) DHS claims that the conditions necessitating an injunction are "almost entirely of [NUWAY's] own making" for several reasons. (Opp. 39-40.) DHS is wrong on each:

- Contrary to DHS's assertion, NUWAY has not increased the number of Medicaid-paying outpatients since receiving the Notices of Payment Withholds; in fact, the census of such NUWAY patients has trended downwards. (Bourgeois Decl. ¶¶ 5-7.)

- NUWAY complied with explicit guidance from DHS in billing for Medicaid-reimbursed services. (*See* Dkt. 12, 36-38.)

- DHS's claim that NUWAY failed to provide DHS the information it requested is wrong; NUWAY provided the information before the Opposition was filed. (Roberts Suppl. Decl. ¶¶ 3-5.)

- There is nothing "unclean" or otherwise underhanded about establishing a nonprofit organization to focus on the provision of services to vulnerable members of our society, who are by their very nature more likely to be Medicaid-paying clients.

## III. THE BALANCE OF HARMS AND THE PUBLIC'S INTEREST SUPPORT GRANTING AN INJUNCTION.

DHS identifies only two alleged harms from NUWAY's requested injunction. Neither alleged harm constitutes a true injury to DHS or the public interest.

### A. Losing Its Ability to Punish NUWAY for Failing to Settle with DOJ Is Not a Legitimate Harm.

DHS first argues that it will be harmed by the injunction because it will be unable to "carry[] out its legal obligations to suspend Medicaid payments." (Opp. 42.) This argument is belied by DHS's own prior conduct. DHS admits that it has known about the DOJ's investigation for at least a year. (Opp. 8-9.) DHS was nevertheless willing to continue reimbursing NUWAY for services and readily granted payment-withhold extensions again and again. (*See* Opp. 13; Dkt. 8 ¶¶ 7-8; Opp. 13.) DHS does not credibly explain why it is suddenly *now* under a legal "obligation" to suspend payments to NUWAY, other than to punish NUWAY for failing to resolve issues with DOJ. (*See* Dkt. 8-5, Dkt. 8, Ex. E at 2.) That DHS will not be able to summarily penalize NUWAY for failing to submit to DOJ's demands is not a legitimate public harm and does not weigh in favor of denying NUWAY's requested injunction.

### B. The Injunction Protects the Public Fisc.

DHS also suggests that denying the injunction will protect the public fisc. (Opp. 42-43.) While DHS has an interest in "prevent[ing] the waste and unnecessary spending of public money," (*id.*), DHS fails to assert there will be an increased cost from allowing NUWAY to continue treating its clients. Assuming DHS is able to find alternative treatment for NUWAY's clients, DHS will simply be paying the same reimbursement amount to another provider for the same treatment.[9] On the other hand, if DHS is unable

---

[9] There is no allegation that NUWAY is currently overbilling for its services such that a transfer to another provider would save money. To the extent that DHS believes

to find alternative treatment for all of NUWAY's clients, any purported savings to the public fisc are not in the public interest. Any savings would be the result of individuals entitled to and in need of treatment not receiving it.

### C. The Harms of Not Granting the Injunction Heavily Outweigh DHS's Claimed Harms.

The harms to NUWAY, its clients, and the public interest that will result if an injunction is not granted—discussed above and at length in NUWAY's opening brief—clearly outweigh the non-existent harm to DHS.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant their motion for a temporary restraining order and/or preliminary injunction.

Dated: February 17, 2025

*/s/ Manda M. Sertich*
Manda M. Sertich (#0504328)
Rachel L. Dougherty (#0399947)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 492-7000
msertich@fredlaw.com
rdougherty@fredlaw.com

*Attorneys for Plaintiffs*

---

NUWAY's prior midpoint billing practice was unlawful, NUWAY changed its group treatment billing practices to conform to DHS's new guidance in September 2024, and the RISE program housing stipend has always been provided by NUWAY at no cost to DHS.