**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

NUWAY ALLIANCE et al.,

                                                    Civil No. 25-492 (JRT/ECW)

                    Plaintiffs,

v.

                                          **MEMORANDUM OPINION AND ORDER**
                                          **DENYING MOTION FOR TEMPORARY**
SHIREEN GANDHI, *Minnesota Department*    **RESTRAINING ORDER AND PRELIMINARY**
*of Human Services Temporary*             **INJUNCTION**
*Commissioner in her official capacity*,

                    Defendant.

---

Manda M. Sertich and Rachel Dougherty, **FREDRIKSON & BYRON**, 60 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Plaintiffs.

Benjamin C. Johnson and Scott H. Ikeda, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101, for Defendant.

For years, Plaintiff NUWAY Alliance and its related entities (collectively "NUWAY") have provided co-occurring substance use disorder and mental health treatment to Minnesotans. NUWAY receives most of its funds through Medicaid reimbursements administered by the Minnesota Department of Human Services ("DHS"). NUWAY brings this action under 42 U.S.C. § 1983 against Defendant Shireen Gandhi, Temporary Commissioner of the Minnesota DHS, in her official capacity to stop DHS from effectuating "temporary payment withholds" of Medicaid reimbursement funds based on a "credible allegation of fraud" against NUWAY that is being investigated by the U.S. Department of

Justice ("DOJ").  NUWAY primarily argues that DHS violated NUWAY's procedural due process rights by failing to provide a contested case hearing wherein NUWAY could challenge the temporary payment withholds.  NUWAY moves for a temporary restraining order ("TRO") and a preliminary injunction.  Because the *Dataphase* factors favor the State, the Court will deny the motion for a TRO and a preliminary injunction.

## BACKGROUND

### I.    FACTS

NUWAY is one of the largest providers of co-occurring substance use disorder and mental health treatment in Minnesota.  (Decl. of Kenneth L. Roberts ¶ 3, Feb. 8, 2025, Docket No. 9.)  In 2014, NUWAY created the Recovery in Supportive Environments ("RISE") program, which pairs intensive outpatient treatment with safe housing.  (*Id.* ¶ 7.) The purpose of RISE is to fill a gap in extended care services for individuals immediately following their discharge from high-intensity residential treatment centers.  (*Id.* ¶¶ 6–8, 15–16.)  Individuals who participate in RISE must meet certain clinical thresholds, including the identification of risk or vulnerability in the client recovery environment.  (*Id.* ¶ 10.)  The RISE program has been effective, with one University of Minnesota study finding that NUWAY intensive outpatient clients were 20 percent more likely to complete treatment if they participated in RISE, and that participants in recovery housing spent 37 more days in treatment than those not in recovery housing.  (*Id.* ¶ 13.)

RISE partners with independent, abstinence-based recovery residences to house clients during the period of intensive outpatient treatment and for a period of 30 days

after the successful conclusion of treatment.  (*Id.* ¶¶ 9–10.)  NUWAY originally paid recovery residences a stipend of $550 per month to house RISE clients; as of July 2023, the stipend was adjusted to $700 per month.  (*Id.* ¶ 10.)

NUWAY operates intensive outpatient programs in seven locations across six counties in Minnesota.  (*Id.* ¶ 12.)  In 2024, NUWAY provided intensive outpatient treatment to thousands of clients, the resounding majority of which participated in RISE.  (*Id.*)  Currently, NUWAY serves 800 clients in intensive treatment, 84% of which participate in RISE.  (*Id.*)  NUWAY also operates a group of smaller residential inpatient treatment programs, which currently serve over 200 clients in five locations.  (*Id.* ¶ 14.)

As an enrolled substance use disorder services provider with Minnesota Health Care Programs ("MHCP"), NUWAY receives Medicaid-supported reimbursements from MHCP for the services it provides to clients.  (*Id.* ¶ 4.)  Approximately 66% of NUWAY's revenue is generated through its outpatient treatment program, and more than 90% of those revenues are from Medicaid-supported payors.  (*Id.* ¶ 5.)  NUWAY seeks approximately $2.8 million from Medicaid each month.  (Decl. of Amanda Novak ("Novak Decl.") ¶¶ 17–18, Feb. 15, 2025, Docket No. 23.)

On April 1, 2022, NUWAY received a Civil Investigative Demand from the U.S. Attorney's Office for the District of Minnesota (DOJ) related to a False Claims Act investigation.  (Decl. of David M. Glaser ("Glaser Decl.") ¶ 2, Feb. 8, 2025, Docket No. 8.) The investigation focused on various issues, including whether NUWAY's provision of

housing in exchange for agreeing to receive outpatient treatment constituted an illegal kickback to patients and whether NUWAY was billing for the proper number of units when submitting claims. (*Id.* ¶ 6.) On the billing matter, because NUWAY believed that it could bill Medicaid for a one-hour unit of service any time a treatment session lasted at least 31 continuous minutes, NUWAY would often schedule its sessions for periods of less than an hour (such as 35-minute sessions) and then begin another session of less than an hour. (*Id.* ¶¶ 11–22.) In other words, in a period of 70 minutes, NUWAY would schedule two 35-minute sessions and then bill Medicaid for two one-hour units of service.

In January 2024, the DOJ notified DHS of its fraud investigation against NUWAY and informed that "the allegations of fraud against Nuway are credible and bear indicia of reliability." (Novak Decl. ¶ 2.) Based on information from the DOJ and its own review, DHS determined there was a credible allegation of fraud against NUWAY, such that Medicaid payments to NUWAY should be temporarily suspended. (*Id.* ¶ 3.)

On February 29, 2024, DHS issued Notices of Payment Withhold ("Notices") to nine NUWAY clinics that provide intensive outpatient treatment. (Glaser Decl. ¶ 3.) The Notices stated that DHS would temporarily withhold all MHCP payments to NUWAY effective April 1, 2024, because there is "a credible allegation of fraud for which an investigation is pending." (*Id.* Ex. A.) More specifically, the letters stated that DHS had information that NUWAY (1) billed for services not provided as billed, (2) improperly induced services through the use of illegal kickbacks, (3) failed to return overpayments,

(4) submitted claims for which it was not entitled to reimbursement, and (5) failed to document services in compliance with the legal requirements. (*Id.*) The Notices informed that Medicaid payments would be withheld from NUWAY until DHS or a prosecuting authority determines there is insufficient evidence of fraud, or until legal proceedings related to the alleged fraud are completed. (*Id.*) The Notices also notified NUWAY of its right to submit written evidence to DHS explaining why the Medicaid reimbursements should not be withheld. (*Id.*)

In March 2024, NUWAY attempted to get more information regarding the basis for the Notices, such as whether the Notices were related to the DOJ investigation, but DHS explained that the Notices comply with state and federal law, which only require DHS to set forth general allegations as to the withholding action and not disclose any specific information regarding an ongoing investigation. (*Id.* Ex. B.) NUWAY submitted written evidence to DHS outlining why there was no credible allegation of fraud and why good cause existed to refrain from suspending payments. (*Id.* Ex. C.)

DHS extended the effective date of the payment withholds several times over the next year. (*Id.* ¶¶ 7–8.) The extensions were meant to give DHS time to complete its review of the written evidence that NUWAY had submitted and to give NUWAY time to provide notice to clients and facilitate their transition to providers, should DHS determine that the temporary payment withholds must remain in place. (*E.g.*, *id.* Ex. D at 2.) In early

February 2025, DHS communicated that it would begin withholding Medicaid payments effective February 21, 2025, and that no more extensions would be provided. (*Id.* Ex. E.)

## II.   PROCEDURAL HISTORY

NUWAY filed this action on February 7, 2025. (Compl., Docket No. 1.) The Complaint asserts three causes of action: (1) a § 1983 claim alleging that DHS violated NUWAY's constitutional right to due process under the Fourteenth Amendment, (2) a § 1983 claim alleging that DHS violated NUWAY's federal right under the Medicaid Act and its implementing regulations, and (3) a claim for a declaratory judgment.

NUWAY filed a motion for TRO and preliminary injunction on February 8, 2025. (Pls.' Mot. TRO & Prelim. Inj., Docket No. 6.) NUWAY seeks an order (1) declaring that the temporary withhold without providing an opportunity for a hearing violates federal and state statutes and NUWAY's constitutional right to due process, (2) requiring DHS to provide a contested case hearing, including any appeal rights, during which NUWAY can challenge the Notices, and (3) enjoining DHS from withholding reimbursement payments for substance use disorder treatment services from NUWAY. DHS opposes the motion.

## DISCUSSION

## I.   STANDARD OF REVIEW

Courts evaluating a motion for a temporary restraining order or preliminary injunction weigh four factors, commonly referred to in the Eighth Circuit as the *Dataphase* factors: (1) the movant's likelihood of success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between that harm and the

harm injunctive relief would cause to the other litigants, and (4) the public interest. *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)); *S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989). The party seeking injunctive relief bears the burden of proving the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

When applying these factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)). That said, "injunctive relief is an extraordinary remedy and the movant has the burden of establishing the propriety of an injunction." *Watts v. Fed. Home Loan Mortg. Corp.*, No. 12-692, 2012 WL 1901304, at *3 (D. Minn. May 25, 2012).

## II.    LIKELIHOOD OF SUCCESS ON THE MERITS

Showing likelihood of success on the merits does not require "a mathematical (greater than fifty percent) probability of success on the merits." *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003). Rather, the movant needs to show that it has a "fair chance of prevailing." *Id.*

NUWAY alleges that DHS violated its right to due process under the Fourteenth Amendment. The Fourteenth Amendment protects against governmental deprivations of "life, liberty, or property" without due process of law. U.S. Const. amend. XIV. To state

a procedural due process claim, a plaintiff must establish that it was deprived of a protected liberty or property interest and that the procedures followed by the government were constitutionally insufficient.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### A.    Protected Interest

The primary issue is whether NUWAY has a protected interest at stake.  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that without a protected liberty or property interest a procedural due process claim fails).  To have a protected property interest in a benefit, a litigant must have more than an "abstract need or desire" or a "unilateral expectation" of it; rather, he must have a "legitimate claim of entitlement." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Property interests arise from "existing rules or understandings that stem from an independent source such as state law."  *Id.*  Here, NUWAY asserts that Minnesota law provides it with a property interest in uninterrupted Medicaid reimbursements generally and a protected interest in the State acting according to specific statutes and regulations.

### 1.    Uninterrupted Medicaid Reimbursements

Because Medicaid is a cooperative federal-state program, both federal and state law are relevant to its administration.  *Nw. Bank of N.D., N.A. v. Doth*, 159 F.3d 328, 331 (8th Cir. 1998).  Under the federal Medicaid regulations, DHS "must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending . . . unless the agency has good cause to not suspend

payments or to suspend payment only in part."  42 C.F.R. § 455.23(a)(1).  Under the federal regulations, DHS need not provide notice to the provider of its intention to suspend such payments before doing so.  *Id.* § 455.23(a)(2).  Such suspensions must be "temporary," though that term is not defined, and may not continue after a determination that there is insufficient evidence of fraud or after the legal proceedings related to the alleged fraud are completed.  *Id.* § 455.23(c).  "A provider may request, and must be granted, administrative review where State law so requires."  *Id.* § 455.23(a)(3).

Courts are split on whether providers have a protected property interest in payments from federal healthcare programs like Medicaid.  The Fourth Circuit, which NUWAY relies upon, recognizes a property interest in a provider's expectation of continued participation in federal healthcare programs like Medicare and Medicaid.  *See Ram v. Heckler*, 792 F.2d 444, 447 (4th Cir. 1986).  But many jurisdictions do not recognize such a property right, as providers are not the intended beneficiaries of the medical programs.  *See Erickson v. U.S. ex rel. Dep't of Health & Hum. Servs.*, 67 F.3d 858, 862 (9th Cir. 1995); *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175–76 (2d Cir. 1991).  In fact, courts have rejected the argument that a provider has a property interest in Medicaid payments that are withheld pending a fraud investigation.  *Personal Care Prods., Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011); *Guzman v. Shewry*, 552 F.3d 941, 953 (9th Cir. 2009).  Though the Eighth Circuit has not directly commented on this issue, in an unpublished opinion the Minnesota Court of Appeals declined to recognize a provider's property right

in Medicaid payments pending a credible fraud investigation.  *See Shire v. Harpstead*, No. 19-0807, 2019 WL 7287088, at *4 (Minn. Ct. App. Dec. 30, 2019).

NUWAY insists that under federal and state laws a provider has a constitutionally protected interest in Medicaid reimbursements based on certain requirements that DHS must follow before suspending payments based on a credible allegation of fraud. NUWAY's primary argument is that Minnesota law requires that providers be afforded a contested case proceeding under such circumstances.    Under Minnesota law, a suspension or withholding of payments constitutes a "sanction."  Minn. Stat. § 256B.064, subd. 1b.   The law states that "[e]xcept as provided in paragraphs (b) and (d), neither a monetary recovery nor a sanction will be imposed by the commissioner without prior notice and an opportunity for a hearing."  *Id.* § 256B.064, subd. 2(a).   Paragraph (b) explains that payments "shall" be withheld or reduced "without providing advance notice" if "there is a credible allegation of fraud."  *Id.* § 256B.064, subd. 2(b)(2).   NUWAY argues that paragraph (b) only qualifies the notice element; in other words, regardless of when notice is issued, if there is a credible allegation of fraud, a provider is entitled to a contested case proceeding.  *See id.* § 256B.064, subd. 2(f) ("Upon receipt of a notice under paragraph (a) that a monetary recovery or sanction is to be imposed, an individual or entity may request a contested case.").

The Court respectfully disagrees.   Though the above authorities may not have explicitly reviewed whether a provider has a property interest in Medicaid

reimbursements based on a contested case proceeding requirement under Minnesota law, their analyses and overarching conclusion that a provider has no property interest in the continued participation in Medicaid is persuasive. A provider's participation in the program is voluntary, and providers are not the intended beneficiaries of federal medical programs. Furthermore, federal and state laws require DHS to temporarily suspend Medicaid payments based on a credible allegation of fraud, and while it is not entirely clear, the most natural reading of the Minnesota law does not require a contested case proceeding under such circumstances. The federal Medicaid regulations themselves do not explicitly require a contested case proceeding, and Minnesota law appears to except suspensions of payments based on credible allegations of fraud from the prior notice and opportunity for a hearing requirement. The right to a contested case proceeding upon which NUWAY relies is predicated on the provider receiving notice under paragraph (a), but the circumstances relevant to this case arise under paragraph (b), which outlines that DHS can withhold or reduce payments without advance notice if there is a credible allegation of fraud. *See id.* § 256B.064, subd. 2(a)–(b). The separation of these subdivisions is meaningful. NUWAY's proposed reading would require a pre-suspension hearing even though prior notice is not required. Such a reading would make little sense. A fairer process would involve a contested case proceeding before suspension of Medicaid payments, but it is not explicitly mandated by the State.

Alternatively, NUWAY argues that Minnesota's statute regarding the suspension of Medicaid payments is unconstitutional because it does not provide a right to a hearing under such circumstances. But the Court fails to see how the statute could run afoul of the Constitution, especially where courts have found that providers do not have a protected interest in Medicaid reimbursements under these circumstances, such that due process does not mandate a hearing. *E.g.*, *Personal Care Prods.*, 635 F.3d at 159; *Guzman*, 552 F.3d at 953; *Shire*, 2019 WL 7287088, at *4–5.

The Court finds that NUWAY does not have a general protected interest in uninterrupted Medicaid reimbursements.

### 2.    Acting Contrary to Statutes and Regulations

NUWAY's remaining arguments similarly fail to establish that it has a protected property interest. NUWAY asserts that additional requirements that DHS must follow before implementing temporary payment withholds of Medicaid reimbursements create a protected property interest in those reimbursement payments. But such requirements do not implicate a protected interest; nor is the Court convinced NUWAY has established such requirements were not met in this case, anyway.

NUWAY first argues that payment withholds must be "temporary," yet here the Notices will effectively impose indefinite payment withholds. *See* 42 C.F.R. § 455.23(c)(1). The statutes do not define the term temporary. Instead, they require that payment withholds end either when there is a determination that there is insufficient evidence of fraud or when the legal proceedings related to the alleged fraud are completed. 42 C.F.R.

§ 455.23(c). NUWAY contends that even though the Notices state that the payment withholds will be "temporary," that is a fiction. (*See* Glaser Decl. Ex. A.) NUWAY relies on an unpublished opinion from the Northern District of Illinois, where a physician brought a § 1983 action against a state official for suspending her Medicaid payments for up to three years without providing her a hearing. *Alexandre v. Ill. Dep't of Healthcare & Fam. Servs.*, No. 20-6745, 2021 WL 4206792, at *4 (N.D. Ill. Sept. 15, 2021). The court noted that while a provider generally has no property interest in Medicaid funds that are withheld pending an investigation of alleged fraud, the government may not withhold funds from a provider indefinitely without a hearing. *Id.* at *7. Finding the year-and-a-half suspension could have crossed the line from "temporary to indefinite," the court found an adequate allegation of a property interest in withheld payments. *Id.* at *9.

While the *Alexandre* court commented on what temporary could mean under similar circumstances, in that case the suspension had already occurred, and the court determined that the year-and-a-half suspension could be impermissibly indefinite under Illinois law, which sets a 3-year maximum limit on the time during which payments may be withheld. *Id.* at *7–9. Here, however, the payments were not yet withheld, and Minnesota law does not set a maximum limit on the time during which payments may be withheld. NUWAY's bare assertion that the payments are going to be "indefinite" because DHS and DOJ have not specified when the fraud investigation will be completed

is merely speculative and insufficient to justify finding a property interest—at least at this point in time.

Instead, this case is more akin to *Clarinda Home Health v. Shalala*, where the Eighth Circuit held that, under federal law, a Medicare provider has no due process right to a hearing on a temporary suspension of Medicare payments during an ongoing investigation for fraud and misrepresentation. 100 F.3d 526, 531 (8ᵗʰ Cir. 1996). The Eighth Circuit found that "[t]he private interest that will be affected by a temporary withholding of Medicare payments is not as serious in nature as an exclusion from the Medicare program." *Id.* Similarly, here the issue concerns the temporary withholding of Medicaid payments, and not the exclusion of a provider in the Medicare program entirely. Given that Medicare and Medicaid are cooperative federal-state programs under the Social Security Act, the Court finds that *Clarinda*'s principles from the Medicare context apply to this case in the Medicaid context, too.

Next, NUWAY argues that DHS must consider whether good cause exists to not withhold payments but failed to engage in such analysis despite NUWAY's large and important role in providing substance use disorder treatment across Minnesota. A State may find that "good cause" exists to not withhold Medicaid payments to a provider against which there is a credible allegation of fraud if, among other things,

> beneficiary access to items or services would be jeopardized by a payment suspension because of either of the following:

(i) An individual or entity is the sole community physician or the sole source of essential specialized services in a community.
(ii) The individual or entity serves a large number of beneficiaries within a HRSA–designated medically underserved area.

42 C.F.R. § 455.23(e)(4).  NUWAY claims that if it loses Medicaid funding, it will effectively be forced to close its doors, which will have a devastating impact on patients who rely on NUWAY for substance use disorder treatment and housing.  *See Trinity Behav. Health Care Sys., Inc. v. Ark. Dep't of Hum. Servs.*, No. 14-651, 2014 WL 5817095 (E.D. Ark. Nov. 7, 2014) (granting TRO against suspension of Medicaid payments to provider because of threat of irreparable harm to patients).  However, DHS explained in its correspondence to NUWAY that there was no good cause to refrain from withholding payments any longer given the pending allegation of fraud.  NUWAY had submitted written evidence arguing why good cause existed, but DHS rejected that contention.  To be sure, NUWAY's possible closure upon the suspension of Medicaid payments could have tremendous impact on NUWAY's patients.  (*See, e.g.*, Sealed Decl. of N.S. ("N.S. Decl.") ¶¶ 9–14, Feb. 8, 2025, Docket No. 10.)  But NUWAY's disagreement with DHS's conclusion does not mean DHS failed to consider whether good cause exists.

Relatedly, NUWAY argues DHS must consider certain statutory factors before imposing payment suspensions, which DHS failed to do.  In suspending Medicaid payments, Minnesota law requires the commissioner to consider the "nature, chronicity, or severity of the conduct and effect of the conduct on the health and safety of persons

served by the individual or entity."  Minn. Stat. § 256B.064, subd. 1b.  Similar to the good

cause issue, NUWAY's disagreement with DHS's evaluation of the situation in light of the

pending credible allegation of fraud is insufficient to demonstrate that DHS failed to

consider these factors.

Finally, NUWAY challenges whether there is a credible allegation of fraud.

Minnesota law instructs that:

> Allegations are considered credible when they have an
> indicium of reliability and the state agency has reviewed all
> allegations, facts, and evidence carefully and acts judiciously
> on a case-by-case basis.  A credible allegation of fraud is an
> allegation which has been verified by the state, from any
> source, including but not limited to:
>
> (i) fraud hotline complaints;
> (ii) claims data mining; and
> (iii) patterns identified through provider audits, civil false
> claims cases, and law enforcement investigations.

Minn. Stat. § 256B.064, subd. 2(b)(2); *see also* 42 C.F.R. § 455.2 (providing similar

definition of "credible allegation of fraud").  Based on information from the DOJ and DHS's

own review, DHS determined there was a credible allegation of fraud against NUWAY,

such that Medicaid payments to NUWAY should be suspended.  The Court finds this is

sufficient to satisfy the statutory requirements that trigger DHS's ability to withdraw or

suspend Medicaid payments based on a credible allegation of fraud.  Despite NUWAY's

efforts, this action is the incorrect forum for NUWAY to argue the merits of the fraud

allegation.

In sum, the Court finds that NUWAY has no protected interest at stake. Though a fairer process would involve a contested case proceeding before the suspension of Medicaid reimbursement payments, the natural reading of the Minnesota law does not mandate such a proceeding. The Court also does not find that the other statutory requirements DHS must follow create a protected property interest—let alone were not met in this case—especially considering the many jurisdictions that have held that providers have no protected property interest in continued participation in Medicaid.

### B. Sufficient Procedures

Once a litigant has established that it has a protected interest, the next inquiry is whether the process provided was adequate. Courts weigh three factors in determining whether the process provided is adequate: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

Because NUWAY has failed to establish it has a protected interest that could be erroneously deprived, the Court need not engage in the remaining inquiries. Even so, DHS did provide some procedures wherein NUWAY could challenge the Notices. DHS provided NUWAY with advance notice of the temporary payment withholds, and DHS

gave NUWAY nearly a year to provide written evidence explaining why the temporary payment withholds should not be effectuated.

Because it has not established it has a protected interest that was deprived, NUWAY has not established it has a fair chance of prevailing on the merits of its § 1983 action based on due process violations.

### C.    Other Claims

NUWAY does not raise likelihood-of-success arguments for its two other causes of action.   NUWAY insists that because the three counts are based on the same core assertion—that DHS violated NUWAY's right to due process—NUWAY need only establish it is likely to succeed on the merits of one claim to obtain a preliminary injunction.

However, the Court finds that NUWAY has not established it has a fair chance of succeeding on the merits of its § 1983 action based on due process violations.  As for the remaining claims, DHS argues there is no private right of action for NUWAY to enforce any provision of the Medicaid statute under § 1983.  *Cf. Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 331–32 (2015) (holding providers had no private right of action to enforce a subsection of the Medicaid Act); *Does v. Gillespie*, 867 F.3d 1034, 1046 (8th Cir. 2017) (holding individual patients had no private right of action to enforce the Medicaid Act under § 1983).  Instead, DHS contends that the Centers for Medicare & Medicaid Services have authority to enforce state compliance with the Medicaid statute or state plan, not providers.  Furthermore, DHS argues the Declaratory Judgment Act does not create a substantive cause of action, and a declaratory judgment is improper where the underlying

statute contains no private right of action. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("[T]he Declaratory Judgments Act is not an independent source of federal jurisdiction . . . ; the availability of such relief presupposes the existence of a judicially remediable right."); *W. Cas. Sur. Co. v. Herman*, 405 F.2d 121, 124 (8th Cir. 1968).

NUWAY does not meaningfully respond to DHS's arguments. It has therefore not met its burden in establishing a likelihood of success on the merits of its remaining claims. *See Watkins*, 346 F.3d at 844.

## III.    THREAT OF IRREPARABLE HARM

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). The movant must demonstrate that irreparable harm is "*likely* in the absence of an injunction," not merely possible. *Hotchkiss v. Cedar Rapids Comm. Sch. Dist.*, 115 F.4th 889, 893 (8th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

There is no denying that the threat of harm is great in this case, primarily to NUWAY's patients. NUWAY's clients, who are extremely vulnerable individuals, could very well lose access to substance use disorder treatment and housing without NUWAY.[1]

---

[1] NUWAY asserts it has third-party standing to assert irreparable harm for its clients because of the provider-patient relationship and fact that certain circumstances hinder NUWAY's patients from representing themselves. *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (explaining

However, alternative treatment providers in Minnesota may be able to absorb the majority, if not all, of NUWAY's outpatient substance use disorder patients for treatment, though the effect on their housing is unknown.  (Decl. of Jennifer Sather ("Sather Decl.") ¶ 4, Feb. 15, 2025, Docket No. 24; Decl. of Monique Bourgeois ("Bourgeois Decl.") ¶¶ 3–4, Feb. 17, 2025, Docket No. 27.)

As for itself, NUWAY argues it will likely have to cease its operations altogether absent Medicaid reimbursement payments.  Courts have recognized that being forced out of business can constitute irreparable harm under certain circumstances.  *Ryko Mfg. Co. v. Eden Servs.*, 759 F.2d 671, 673 (8th Cir. 1985); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970).  However, DHS is not forcing NUWAY to shut down; it is merely withholding Medicaid payments, and economic loss alone does not constitute irreparable harm.  *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).  That said, given that 66% of NUWAY's revenue is generated from its outpatient treatment program and 90% of those revenues comes from Medicaid-supported payors, NUWAY will likely struggle to operate without the MHCP reimbursements.

NUWAY also argues it will suffer professional and reputational harm.  NUWAY contends that "[i]njury to reputation or goodwill is not easily measured in monetary terms, and so often is viewed as irreparable."  Wright & Miller, 11A Fed. Prac. & Proc. Civ.

---

when third-party standing is appropriate); *Singleton v. Wulff*, 428 U.S. 106, 114–18 (1976) (recognizing abortion providers' ability to assert the rights of women patients); (*see also* N.S. Decl. ¶ 15 (declaring inability to challenge DHS's decision absent help from NUWAY).)

§ 2948.1 (3d ed.); *see also Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (finding district court did not clearly err in finding irreparable harm to reputation and goodwill).  A payment suspension will disrupt—if not dismantle—NUWAY's operations and require clients to either seek services from other providers or else lose access to such services and/or housing altogether.  If NUWAY were to recover in the future, NUWAY is concerned its clients will not likely return because of a loss in trust.  However, NUWAY's fear about a potential loss of customer goodwill is merely speculative at this juncture, and though harm to reputation and goodwill is difficult to quantify, the Eighth Circuit has held that such harm can be compensable through money damages.  *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013).  Further, as DHS argues, any loss of customer goodwill may be attributable to other issues, such as the fact that NUWAY has been under a DOJ fraud investigation that has been publicized in various media.

DHS urges the Court to find that the doctrine of unclean hands forecloses a finding of irreparable harm.  DHS essentially argues that NUWAY created or at least contributed to the impending crisis before the Court: NUWAY had almost a year to prepare itself and its clients for a possible loss of Medicaid funding, yet it failed to do so.  For example, NUWAY failed to diversify funding sources, persistently engaged in highly suspect billing practices for years, increased the number of Medicaid-paying outpatient clients since receiving the Notices, and failed to cooperate with DHS or provide information to assist

in avoiding disruption of services to its recipients.  (Novak Decl. ¶ 16; Sather Decl. ¶¶ 7–10.)  NUWAY contests these allegations.  (Bourgeois Decl. ¶¶ 5–7.)

While NUWAY could and should have done more to prepare itself and its clients for the possible loss of Medicaid reimbursement payments, the Court declines to find that the doctrine of unclean hands forecloses a finding of irreparable harm.  The potential harm to NUWAY's clients—who are extremely vulnerable individuals—is too great to ignore.

## IV.    BALANCE OF HARMS AND PUBLIC INTEREST

The remaining *Dataphase* factors—balance of harms and public interest—merge when the government opposes injunctive relief.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  NUWAY restates the threat of irreparable harm to it and its patients and argues that, even if DHS is able to find substitute treatment providers or housing for its patients, there will be no benefit to the public fisc because Medicaid will continue to pay for the medically necessary substance use disorder treatment for which it would have otherwise reimbursed NUWAY.  That may be so, but the difference is that those other providers are not currently subject to a pending investigation based on a credible allegation of fraud.  The State's interest in preserving the integrity of the Medicaid program and protecting the public from fraud is strong.  Further, it appears that NUWAY could have and should have done more to prepare for the impending Medicaid payment freeze.  The balance of harms and public interest factors do not favor granting NUWAY's request.

**CONCLUSION**

The *Dataphase* factors, particularly NUWAY's likelihood of success on the merits, weigh in favor of the State.  The Court is deeply concerned with the plight of NUWAY's patients, who may suffer irreparable harm by the temporary payment withholds.  But in the Court's opinion, NUWAY's argument that it has a protected interest in the payments does not have a fair chance of prevailing on the merits given the lack of an explicit requirement for a contested case hearing.  Despite the Court's belief that a much fairer process would provide a contested case proceeding before a withholding of payments, that is **not** what current law requires.  Further, it is difficult to square NUWAY's alleged fraud with the State's interest in preserving the integrity of the Medicaid program and protecting the public from fraud.  The State's interest is important as well.  The Court encourages a swift resolution of the investigation into alleged fraud which will serve all interests in the outcome of this dispute.  NUWAY's motion for a TRO and a preliminary injunction is denied.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 6] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  February 25, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge